Brian **DAVIDSON**, Appellant,

v.

**STATE of Indiana, Appellee.**

**No. 1080S396.**

Supreme Court of Indiana.

Dec. 27, 1982.

Richard J. Conroy, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant, Brian Davidson, was convicted of Murder, Ind.Code § 35–42–1–1 (Burns Repl.1979), at the conclusion of a jury trial in Lake Superior Court on April 3, 1980. Davidson was sentenced to a term of thirty (30) years imprisonment. He now appeals.

Defendant raises four errors on appeal, concerning: 1) whether the trial court erred in not allowing the defense to question a

juvenile witness about his past delinquent activity; 2) whether the trial court erred in allowing impeachment of the defendant through use of his pre-arrest silence; 3) whether there was sufficient evidence to convict the defendant of murder; and, 4) whether the trial court erred in giving Instruction No. 6.

The evidence revealed that on June 7, 1979, the victim, Gregory Runyon, and friends were celebrating their graduation from high school at a public beach. The defendant was also at the beach where he and Runyon fought. Defendant left the beach but returned with a rifle and shot and killed Runyon.

## I

Prior to the start of the trial, the State filed a motion *in limine,* asking the trial court to forbid the defendant from inquiring into the juvenile record of one of the State's witnesses, John Thoreson. The State contended that the witness' juvenile record was not admissible to impeach the witness. Defendant agreed that it would not be proper to delve into any pending charges but argued that if any of the juvenile adjudications were for acts which could properly be used for impeachment against an adult, that is, for crimes of dishonesty, then a witness' juvenile status would not prevent use of those adjudications for impeachment. The trial court granted the motion for the *voir dire* and the opening statements but reserved its ruling for a time when the witness was ready for cross-examination. Before calling Thoreson to the stand, the State requested the trial court to rule upon whether Thoreson's shoplifting adjudication could be covered on cross-examination. The defendant voiced no objection nor did he raise an argument. The trial court ruled that the defense could inquire about the shoplifting incident but could not raise any other matters, especially pending charges. After the direct examination was concluded, the prosecutor talked to the witness outside the presence of the jury and learned that he was only twelve years old at the time of the shoplifting and

that he was never tried for the charge and hence was never found to be delinquent or adjudicated to have committed shoplifting. The State then renewed the motion *in limine* and the court granted the motion. The defendant again made no argument nor objected in any way to the trial court's ruling. The defendant fully cross-examined Thoreson but made no attempt to place into evidence any prior crimes or juvenile adjudications of the witness before the jury. He raised no argument to the court nor offered to the court any evidence of past crimes or juvenile adjudications of the witness.

 A motion *in limine* is, of course, only a temporary order that requires a party to notify the court when he intends to offer evidence covered by the order so that the court can at that time determine the admissibility of such evidence. *Smith v. State,* (1981) Ind., 426 N.E.2d 364. A challenge to the court's ruling on a motion *in limine* presents nothing for this Court's review but must be based on the trial court's exclusion of evidence offered at trial. *Inman v. State,* (1979) Ind., 393 N.E.2d 767; *Johnson v. State,* (1981) Ind.App., 423 N.E.2d 623. Here the defendant made no objection or argument against the State's motion nor did he argue reasons for the admissibility of any evidence available to him on cross-examination. There is no error presented to this Court on the ruling of the trial court granting the motion. *Smith, supra; McCraney v. State,* (1981) Ind., 425 N.E.2d 151; *Baker v. State,* (1981) Ind., 425 N.E.2d 98.

 Defendant now claims he should have been permitted to cross-examine the witness regarding pending charges and other charges not yet processed through the juvenile system as this would show that the witness wanted to curry favor with the State in order to help his position as a juvenile offender. Defendant argues that this show of bias would have affected Thoreson's credibility on the witness stand. Defendant did not argue this before the trial court and therefore cannot raise it here. Any grounds not raised in the trial

court are not available on appeal, *Brown v. State,* (1981) Ind., 417 N.E.2d 333, and a party "cannot change or add to his objections or the grounds thereof in the reviewing court." *Lucas v. State,* (1980) Ind., 413 N.E.2d 578. Furthermore, it is recognized in Indiana law that a witness cannot be impeached by proof of particular extraneous acts of misconduct which are not reduced to convictions. *Chambers v. State,* (1979) Ind., 392 N.E.2d 1156. There was no showing in the trial court nor is it argued here that any juvenile adjudications or pending charges of this witness were for any offenses within the class of convictions permissible for impeachment pursuant to the rule of *Ashton v. Anderson,* (1972) 258 Ind. 51, 279 N.E.2d 210. There is no reversible error on this issue.

## II

During cross-examination of Defendant, the prosecutor questioned Defendant without objection, as follows:

"Q Sir, is it your testimony you did not intend to hit anyone with those shots?

A Yes, it is.

Q Did you ever go to the police sir, with this information?

A No, maam (sic).

Q I believe you testified that while you were hiding you knew that someone had been hit, is that correct?

A That's right.

Q And yet you never went to the police?

A No, maam (sic), I was scared to death.

Q And when were you ultimately arrested, sir?

A Approximately twelve days after the incident.

Q So, in that two weeks you never went to the police with your information?

A That's right.

Q You testified that you got a hair cut, is that correct?

A That's right.

Q To avoid detection?

A That's right.

Q Didn't it occur to you that since a man had died and you knew what had happened that you should give that information to the authorities?

A Nobody knows how much that occurred to me, maam (sic).

Q But you did not go to the police?

A No, maam (sic)."

Record, pp. 748–49.

Defendant contends that permitting the State to interrogate him concerning his pre-arrest silence violated his right against self-incrimination guaranteed by the constitutions of the United States and the State of Indiana. The record shows that no objection was raised at trial to the questions regarding his pre-arrest silence and because the defendant failed to object at the trial level, any alleged error is waived. *Haynes v. State,* (1982) Ind., 431 N.E.2d 83, 85; *Bray v. State,* (1982) Ind., 430 N.E.2d 1162, 1165.

## III

The defendant claims that the element of intent was not presented in sufficient evidence at trial to support the conviction for murder. In reviewing sufficiency arguments this Court will not weigh the evidence or determine the credibility of witnesses. Rather, we will consider only that evidence which is most favorable to the State, together with all logical and reasonable inferences to be drawn therefrom. The verdict will be upheld so long as there is sufficient evidence of probative value from which the jury could find the defendant guilty beyond a reasonable doubt. *Showecker v. State,* (1982) Ind., 432 N.E.2d 1340, 1342; *Willard v. State,* (1980) Ind., 400 N.E.2d 151, 160.

The evidence showed that on June 7, 1979, the victim, Gregory Runyon, and a group of his friends went to a public beach in Gary, Indiana, to celebrate their graduation from high school. There were many other persons and groups on the beach oth-

er than the victim and his group. The defendant, Brian Davidson, was also on the beach with three of his friends. Their purpose in being on the beach was to drink beer and play guitars. After Davidson and his friends had been there about an hour and a half, they ran out of beer and approached Runyon's group, who had beer. An altercation ensued between these two groups and the evidence showed that victim Runyon and his friends got the better of the fight and the defendant and his group fled the area. There was evidence that the defendant's group made threats to return with a gun when they left the beach. Later that evening, Defendant and his friends returned to the beach and Defendant had a rifle in his possession. They scouted the beach and finally found Runyon's group and at that point, Defendant pointed the rifle at the group, telling them not to move or he would shoot. Defendant and his companions then forced some of the young people away from the beach. Other persons, after noticing the altercation, began to crowd around Defendant and his companions. Runyon and his group then attempted to leave and Greg Runyon pleaded with Defendant not to shoot him. Runyon tried to run away from the scene and Defendant fired the rifle, first into the sand, and then aimed and fired at the fleeing Greg Runyon, striking him in the back. Runyon died from the bullet wound. Defendant and his friends then fled the scene and left the rifle near a house. They decided not to inform the police of their participation in the incident. The day after the murder, Defendant learned of the death of Greg Runyon and had his hair cut short to change his appearance and he and the others decided upon a story to tell the police should any of them be arrested.

Defendant claims that the shooting was accidental and that he did not intend to shoot and kill Runyon. We feel that there was ample and sufficient evidence from which the jury could find beyond a reasonable doubt that the defendant was guilty of the charge of murder. There were conflicts in the various details of the incident as related above but conflicts in the evidence are resolved by the jury, not the reviewing court. It is also well settled that the element of intent required in the killing to constitute murder may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm. *Vasseur v. State,* (1982) Ind., 430 N.E.2d 1157, 1160; *Jackson v. State,* (1981) Ind., 426 N.E.2d 685, 688. The jury was free to believe or disbelieve the defendant's testimony that he did not intend to kill anyone, and to assign to it whatever weight the jury deemed appropriate. See *Dooley v. State,* (1981) Ind., 428 N.E.2d 1, 6. There is no error on this issue.

IV

Finally, Defendant claims that the trial court's final instruction No. 6 shifted the burden of proof on the issue of intent to the defendant. Defendant concedes that no objection was made to instruction No. 6 at trial and therefore Defendant waived any error in the giving of the instruction. *Jacks v. State,* (1979) Ind., 394 N.E.2d 166, 173. Defendant, however, claims that the giving of instruction No. 6 amounted to fundamental error and therefore is still reviewable on appeal by this Court. Instruction No. 6 reads as follows:

" 'Intent' concerns the frame of mind of a person at the time of a particular act. You can only determine intent by what a person says and by what he does. Intent is a mental process. It is proved by the facts and circumstances leading up to and surrounding the particular act. Obviously, intent is a secret and silent operation of the mind. Its visible manifestation is the accomplishment or the attempted accomplishment of the act decided upon. An individual whose intent is sought to be ascertained may remain silent. Upon the question of intent, you may infer that a person intends to accomplish the necessary, natural, and probable consequences of his act."

We do not agree that the giving of instruction No. 6 resulted in fundamental error. Defendant relies on *Sandstrom v.*

Montana, (1979) 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39, where the United States Supreme Court found it improper to instruct the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." The Supreme Court held this to be a conclusive presumption that shifted the burden of proof from the State to the defendant and was therefore unconstitutional. *Id.* at 524, 99 S.Ct. at 2459, 61 L.Ed.2d at 51. It is apparent on its face, however, that instruction No. 6 does not dictate any such presumption to the jury. It attempts to explain intent to the jury and tells them they may infer that a person intends to accomplish the necessary natural and probable consequences of his act by considering that act and the surrounding circumstances leading up to it. The jury was to determine the defendant's intent by examining and considering all the facts and circumstances surrounding the incident at the beach. *Jacks, supra.* In addition, as we have said many times, instructions should be read as a whole and are to be construed together. *Cobb v. State,* (1981) Ind., 412 N.E.2d 728, 742; *Henderson v. State,* (1979) Ind., 395 N.E.2d 224, 228. Instruction No. 9 informed the jury that the defendant was to be presumed innocent unless the State proves every essential element of the crime charged beyond a reasonable doubt, and that the defendant was not required to present any evidence on his behalf. There was no error in the giving of instruction No. 6.

The trial court is in all things affirmed.

GIVAN, C.J., and DeBRULER and HUNTER, JJ., concur.

PRENTICE, J., concurs in result without opinion.