Kenneth FOX, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 385S97.

Supreme Court of Indiana.

April 30, 1987.

Robert P. Harper, Harper and Rogers, Valparaiso, for appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Defendant Kenneth E. Fox was sentenced to thirty-six years imprisonment following his conviction of murder. In this direct appeal, we regroup defendant's issues as follows:

1. Restriction of cross-examination;

2. Propriety of judicial comments in presence of jury;

3. Errors related to expert testimony;

4. Improper initial hearing;

5. Failure to consider mitigating circumstances at sentencing; and,

6. Sufficiency of evidence.

Defendant and Sharon Fox continued to live together following the dissolution of their turbulent twenty-six year marriage. During an argument on January 20, 1984, defendant fatally stabbed Sharon with a knife.

### Issue I

Defendant contends that the trial court improperly curtailed his cross-examination of Barbara Dunn. In his brief, defendant argues that such questioning was relevant upon issues of her bias and prejudice as a witness, and upon the defendant's state of mind.

On direct examination, Dunn testified that during the argument which preceded the fatal stabbing, Sharon telephoned her (Dunn) under circumstances indicating that Sharon's intent was to taunt the defendant, who could apparently overhear Sharon's end of the conversation, by threatening to leave him. Approximately ten minutes after the phone call, defendant burst through the back door of the Dunn residence in an extremely agitated condition. He stated that he and Sharon had been figthting, and that he had stabbed her. During the cross-examination of Dunn, the trial court prevented defense counsel from questioning her regarding a relationship which allegedly existed between Dunn and Rick Fox, the son of the defendant and Sharon Fox. Defendant now argues that such questioning was relevant upon issues of Dunn's

bias and prejudice as a witness, and upon the defendant's state of mind.

■ At trial, defense counsel argued only that the line of questioning was relevant to show defendant's state of mind. Defendant did not claim that the desired cross-examination was intended to show bias or prejudice of the witness. Grounds for the admission of evidence which are urged on appeal must be the same as those presented at trial. *Swinehart v. State* (1978), 268 Ind. 460, 376 N.E.2d 486. A defendant seeking to avoid the trial court's limitation on the scope of cross-examination must inform the trial court of his supporting legal argument, in order to maintain abuse of discretion as grounds for appeal. *Wireman v. State* (1982), Ind., 432 N.E.2d 1343. In *Davidson v. State* (1982), Ind., 442 N.E.2d 1076, we rejected the argument of a defendant claiming that he should have been permitted to cross-examine a witness to show bias. We stated:

> Defendant did not argue this before the trial court and therefore cannot raise it here. Any grounds not raised in the trial court are not available on appeal, *Brown v. State* (1981), Ind., [275 Ind. 441] 417 N.E.2d 333, and a party "cannot change or add to his objections or the grounds thereof in the reviewing court." *Lucas v. State* (1980), Ind. [274 Ind. 635] 413 N.E.2d 578.

442 N.E.2d at 1078–1079. Limiting the scope of cross-examination is a function within the sound discretion of the trial judge and will not be reversed absent a showing of clear abuse. *Haak v. State* (1981), 275 Ind. 415, 417 N.E.2d 321, 322; *Cobb v. State* (1981), 274 Ind. 342, 412 N.E.2d 728, 739.

■ With respect to defendant's contention that the questions were relevant to show defendant's state of mind, we note first that a trial court has broad discretion in the conduct of cross-examination, and will be reversed only for an abuse of that discretion. *Williams v. State* (1986), Ind., 492 N.E.2d 28. If the offered evidence is only marginally relevant, it is within the sound discretion of the trial court to determine its admissibility. *Wallace v. State* (1985), Ind., 486 N.E.2d 445.

■ To reduce a homicide from murder to voluntary manslaughter, it must be found that there was sufficient provocation to excite in the mind of the defendant such emotions as anger, rage, sudden resentment, or terror, and that such excited emotions may be sufficient to obscure the reason of an ordinary man. *Hardin v. State* (1980), 273 Ind. 459, 404 N.E.2d 1354. Defendant suggests that his awareness of a relationship between Barbara Dunn and his son, compounded with Sharon Fox's threat to go out with Barbara Dunn, together provided sufficient provocation to create such "sudden heat". While we recognize possible merit in defendant's argument that the evidence should have been presented to the jury for evaluation, we disagree that the trial court's ruling constituted reversible error. Evidence of the alleged relationship was, at most, only tangentially relevant to defendant's state of mind, and we view the exclusion of testimony as a matter properly within the ambit of trial court discretion.

Defendant also claims that the trial court curtailed cross-examination concerning Barbara Dunn's alleged attempt to encourage Rick Fox to change his testimony. We note that the trial court limited cross-examination only after Barbara adamantly denied making such an attempt. The trial judge is in the best position to observe the trial proceeding and should control the extent of cross-examination. We find no abuse of discretion.

### Issue II

Defendant contends that the cumulative effect of the trial court's comments and demeanor toward the defense operated to impair the defendant's right to a fair and impartial trial. His argument centers primarily upon the trial court's comments during the course of the trial. Among those cited by defendant are:

> THE COURT: * * * We're never going to get finished. I think both the State and Defense agreed these people had a stormy relationship. We don't need to

prove it with every witness for about an hour. There's no dispute about it, as I understand you people. I don't mind you asking this witness if these people argued and drank, it's fine to lay a foundation, but every witness that takes the stand doesn't need to go through this.

\* \* \* \* \* \*

THE COURT: I think the witness already answered, she did not. This witness is not on trial here as far as I know and she's testifying to the night in question and what was taking place at that particular time and, you know, to be polite to her—you better get some evidence because you asked these questions and—

\* \* \* \* \* \*

THE COURT: The only thing Barb Dunn testified here, her only testimony concerning what took place that particular evening. She didn't know the decedent and the defendant very long, and she testified as to what happened that night and I don't believe there's been any conflicting testimony necessary as to what happened that particular evening. I don't like to—I don't think her private life here should be placed on trial because she comes and testifies what happened a particular night. I just don't know why a witness should have to go through that, to be quite frank with you. \* \* \* So maybe I'm here protecting the witness, but what difference does it make what relationship she had with anybody, if it wasn't Mr. and Mrs. Fox? I don't think it's fair to her, to be quite frank.

\* \* \* \* \* \*

THE COURT: It would be nice to try this entire marriage, go back twenty-six years, settle in here for the entire winter. I know for the last time both sides have practically stipulated and agreed that this has been a verbally abusive relationship or marriage. It's been a marriage with physical violence during the twenty-six years. We accept that as given. Why do I have to have every fight gone into? If there

was some contested issue of fact in this case,—the purpose of the jury is to decide the facts.—They got that as a fact and nobody is contesting it. I don't think Defense is indicating for a minute that this wasn't a marriage with violence and arguments, alot of verbal arguments. So if that's admitted and given, I don't need every witness for the next two days to get into specifics. I don't think I can make it any plainer.

■ After reviewing in context the cited remarks of the trial judge, along with the other allegations and arguments of defendant's brief, we fail to conclude that the trial court abandoned its position of impartiality and neutrality. We find that in the context of this particular trial, the trial court's comments were a permissible attempt to promote an orderly progression of events at the trial, and did not impart an appearance of partiality.

In responding to a similar contention in *Marbley v. State* (1984), Ind., 461 N.E.2d 1102, this Court stated:

A trial court should refrain from making unnecessary comments and should remain impartial. Moreover, a trial judge's conduct should be such that his remarks or apparent attitude do not impart to the jury an appearance of partiality. It is important, however, that the trial court control the proceedings by taking responsible steps to insure that proper discipline and order exist in the courtroom. [Citation omitted]

461 N.E.2d at 1107. *See also, Cornett v. State* (1983), Ind., 450 N.E.2d 498; *Horne v. State* (1983), Ind., 445 N.E.2d 976.

### Issue III

Detective Robert Weeks participated in the murder investigation but did not visit the crime scene until a few hours after the conclusion of the initial investigation of the scene. When Weeks arrived, he found the original crime scene had been altered as some of the victim's blood had been cleaned away. Nevertheless, Weeks proceeded to examine the scene and testified at trial

with regard to the blood spatters found in the defendant's living room. Defendant now contends that 1) Detective Weeks was not properly qualified as an expert; 2) the trial court improperly denied defense counsel an opportunity to *voir dire* Detective Weeks regarding his expertise; 3) there was an insufficient foundation laid for Weeks' testimony concerning the blood spatters; and 4) the trial court erred in allowing Weeks to testify regarding a State exhibit which was never introduced into evidence.

■■■ In order to qualify as an expert, two requirements must be met. First, the subject matter of the expert's opinion must be so distinctly related to some science, profession, business or occupation as to be beyond the knowledge of the average lay person. Second, the witness must have sufficient skill, knowledge or experience in the field to make it appear that the witness' opinion or inference will aid the trier of fact in the search for truth. *City of Indianapolis v. Robinson* (1981), Ind.App., 427 N.E.2d 902, 904. No precise quantum of knowledge is required if the witness shows a sufficient acquaintance with the subject. *Reid v. State* (1978), 267 Ind. 555, 372 N.E.2d 1149. The determination of whether a witness is qualified to testify as an expert is within the sound discretion of the trial court whose rulings will not be disturbed absent an abuse of discretion. *Moody v. State* (1983), Ind., 448 N.E.2d 660; *Epps v. State* (1977), 267 Ind. 177, 369 N.E.2d 404.

Detective Weeks testified that during 1980, he attended a school for approximately one to two weeks for the study of bloodstains and interpretation of blood spatterings. The school was taught by an experienced forensic criminologist. Detective Weeks had occasion to examine blood spattering evidence in connection with a prior murder; however, he had never testified in a trial on flight characteristics of blood or blood spattering.

■■■ Defendant does not dispute that the subject matter of Detective Weeks' opinion was beyond the knowledge of the average lay person. We recognize that Detective Weeks' expertise in this area was limited; however, we find no abuse of discretion in the trial court's ruling that his limited experience goes to the weight of his testimony rather than its admissibility. *See, e.g., Spencer v. State* (1958), 237 Ind. 622, 147 N.E.2d 581; *City of Indianapolis v. Robinson, supra.*

■■■ Defendant further contends that the trial court erred in refusing defendant's request to ask preliminary questions of Detective Weeks' regarding his qualifications before determination that he was entitled to testify as an expert witness. Such use of preliminary questioning can often serve the goals of efficient trial procedure and should be encouraged. However, the mere failure to permit such *voir dire* does not constitute error where there is no showing that prejudice resulted therefrom. Where the precluded preliminary questioning would have evoked responses which disqualified the witness as an expert, such information could also have been developed during cross-examination thus resulting in a motion to strike prior testimony and a request for jury admonition to disregard. In the present case, however, defendant did not utilize cross-examination to demonstrate facts which would have disqualified the witness as an expert. Thus he has failed to show resulting prejudice resulting from his inability to ask preliminary questions of the witness.

■■■ Defendant contends there was an insufficient foundation laid for Detective Weeks opinion testimony concerning the blood spatters because the blood had been partially cleaned up at the scene, and because no evidence was presented showing whose blood was being examined. We note that defendant failed to object at trial to the testimony on the grounds of insufficient foundation. Thus we deem the issue waived. *Patterson v. State* (1978), 267 Ind. 515, 371 N.E.2d 1309; *Wells v. State* (1970), 254 Ind. 608, 261 N.E.2d 865.

Defendant also contends that the trial court erred in allowing Detective Weeks to testify regarding State exhibit # 17 which consisted of a photograph of a chair with

blood on it. State exhibit # 17 was never properly identified or offered into evidence. Nevertheless, we deem any resulting error harmless as Detective Weeks essentially testified only that the chair had blood on it. There was no other factual significance given. Defendant has failed to show how he was harmed or prejudiced as a result of such error.

### Issue IV

Defendant claims error due to the trial court's failure at defendant's initial hearing to comply with Ind. Code § 35–33–7–5 which requires the trial court to advise the defendant of his right to counsel, right to speedy trial, amount and condition of bail, the privilege against self-incrimination, and the nature of the charges against him.

Defendant appeared at the initial hearing represented by counsel who expressly waived formal reading of the charges and explained that defendant already understood the possible penalties. The trial court accepted defendant's plea of not guilty, granted defendant's request for jury trial, ordered discovery and scheduled a bond hearing. Although the record is silent as to any advisements concerning the defendant's right to a speedy trial or his privilege against self-incrimination, we note that defense counsel failed to bring the omissions to the court's attention before proceeding to trial. More important, however, defendant has neither shown or even alleged that his right to speedy trial or privilege against self-incrimination were impinged in any way. Absent any showing of harm, and in light of the foregoing circumstances, we find that the trial court's omissions do not warrant reversal.

### Issue V

Defendant contends that the trial court erred in imposing a prison sentence of thirty-six years because the court failed to consider all the mitigating factors involved in the crime. The trial court's sentencing statement reads as follows:

THE COURT: First of all, the guidelines for sentencing on a murder conviction, as indicated by counsel, is 40 years. Now, to that standard sentence the Court may make specific findings of aggravating circumstances and add to that 40–year sentence up to 20 years for a maximum of 60, if the Court finds such aggravating circumstances. It's within the discretion of the Court. To the 40 years the Court may deduct up to ten years for mitigating circumstances that the Court specifically finds, which could bring it down to 30 years. So the range for a conviction on murder to be handed out by the Court is between 30 and 60 years.

First of all, the Court will enter the flat sentence of 40 years at this time. The Court will, as indicated by counsel, find no aggravating circumstances which would give the Court the power to increase the sentence on the aggravating circumstances. On the mitigating circumstance side, the Court will find the Defendant has no prior criminal activity or record to speak of and the nature and circumstances surrounding this particular offense. And the Court heard all the evidence, not only at the trial but also at the bond hearing previous to the trial. The Court will find that as mitigating circumstance and deduct from the 40–year sentence a total of four years. So the sentence of the Court will be a 36–year sentence.

As noted by the trial judge, the presumptive sentence for murder is forty years. Finding of mitigating circumstances is within the discretion of the sentencing court and the court has no absolute duty to negative potentially mitigating circumstances. *Stark v. State* (1986), Ind., 489 N.E.2d 43; *Frappier v. State* (1983), Ind., 448 N.E.2d 1188. The sentencing court in the instant case imposed less than the presumptive sentence and properly cited the mitigating circumstances found to be germane to the sentencing. There is no error.

### Issue VI

The final issue for our consideration concerns the sufficiency of the evidence. The defendant contends that 1) the State failed to sustain its burden of negating the presence of sudden heat beyond a reasonable

doubt and 2) the State failed to sustain its burden of negating the defense of self-defense beyond a reasonable doubt. Both of these defenses presented questions of fact for the jury to resolve. *Sanders v. State* (1981), Ind., 428 N.E.2d 23.

■ In addressing the issue of sufficiency of evidence, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223; *Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

■ Killing in the sudden heat of passion is the element that distinguishes voluntary manslaughter from murder, but there must be sufficient provocation to induce such passion to render the defendant incapable of cool reflection. *Robinson v. State* (1983), Ind., 453 N.E.2d 280. The evidence most favorable to the verdict indicates that on the day of the killing, defendant and Sharon Fox argued for the better part of the afternoon. Sharon insisted on going out that evening and threatened to leave the defendant. On numerous previous occasions she had similarly threatened or actually left him. A fight broke out in the kitchen during which the defendant grabbed a butcher knife. They fought through the dining room and into the living room where the defendant fatally stabbed Sharon through the neck. In addition to the fatal stab wound, Sharon sustained a number of cuts on her face and defensive wounds on her hands. Upon the arrival of emergency medical personnel dispatched to the scene, the defendant stated "She was trying to leave me and I stopped her. I wouldn't let her leave." Despite the undisputed evidence that Sharon Fox died in the course of a violent altercation, the jury was entitled to find that the provocation was inadequate to obscure the defendant's reason or his understanding of the consequences of his actions. We find that suffi-

cient evidence existed to support the jury's finding that the defendant was not acting under sudden heat.

Defendant assumes that because he sustained a laceration on his leg during the fight he has successfully raised the issue of self-defense in this case. We disagree. It appears that defendant was unaware of the injury until it was brought to his attention by medical personnel attending to him. During the post-arrest interrogation, the interrogator inquired how defendant acquired the cut. Defendant responded:

> She musta did that, I don't know, I don't know how that happened, maybe she did it, I don't know how it happened.

The evidence indicates that defendant initially picked up the knife and wielded it throughout the struggle. There is no indication that defendant used deadly force because of any belief that it was necessary to prevent serious injury to himself. The existence of defendant's wound, standing by itself, was insufficient to put the issue of self-defense into the case.

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.