Brian A. STALEY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 03A01–9308–CR–279.

Court of Appeals of Indiana,
First District.

April 28, 1994.

J. Grant Tucker, Columbus, for appellant.

Pamela Carter, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Brian A. Staley appeals his conviction following a trial by jury of operating a vehicle while intoxicated and resisting law enforcement, both class A misdemeanors. We affirm.

Staley makes essentially two allegations of reversible error in this appeal:

(1) that he was denied his Sixth Amendment right to be represented by counsel at all critical stages of the proceedings when he was required to participate in a striking of judges before he had counsel appointed for him and was then unable to obtain a change of venue; and

(2) that the evidence is insufficient to sustain the jury's verdict.

## I.

Staley contends that his Sixth Amendment right to be represented by an attorney at all critical stages of the proceedings was violated when he was denied the opportunity to be represented by counsel during the striking of judges which occurred after the State filed charges against him but prior to his initial hearing when counsel was appointed for him. Staley was given the opportunity to strike judges but contends that he was unable to comprehend the significance of that opportunity so early in the proceedings.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." The purpose of the guarantee is to "protec[t] the unaided layman at critical confrontations" with his expert adversary, "the government, *after* the adverse positions of government and defendant have solidified" with respect to a particular alleged crime. *McNeil v. Wisconsin* (1991), 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158. Accordingly, the right to counsel attaches only at or after the initiation of adversary judicial proceedings against the defendant. *U.S. v. Gouveia,* 467 U.S. 180, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (citing *Kirby v. Illinois* (1972), 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411). Thereafter, a defendant is entitled to representation at any pretrial confrontation where

the presence of counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right to meaningfully cross-examine the witnesses against him and to have the effective assistance of counsel at trial itself. *Coleman v. Alabama* (1970), 399 U.S. 1, 8, 90 S.Ct. 1999, 2002, 26 L.Ed.2d 387; *U.S. v. Wade* (1967), 388 U.S. 218, 228, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149.

■ The determination of whether a pretrial proceeding is a "critical stage" requiring the presence of counsel depends upon an analysis of whether potential substantial prejudice to the defendant's rights inheres in the particular confrontation and the ability of counsel to avoid that prejudice. *Coleman,* 399 U.S. at 10, 90 S.Ct. at 2003; *Wade,* 388 U.S. at 228, 87 S.Ct. at 1933. A "critical" post-indictment confrontation is adversarial in character, an event where the function of the lawyer is essentially the same as the lawyer's function at trial. *United States v. Ash* (1973), 413 U.S. 300, 312, 93 S.Ct. 2568, 2575, 37 L.Ed.2d 619. Such a critical event possesses the potential to affect the whole trial because the risk, that certain rights or defenses might be sacrificed or irretrievably lost if not then and there asserted, is present. *Wade,* 388 U.S. at 756, 87 S.Ct. at 1391. The right to counsel safeguards other rights deemed essential for the fair prosecution of a criminal proceeding. *Maine v. Moulton* (1985), 474 U.S. 159, 170, 106 S.Ct. 477, 484, 88 L.Ed.2d 481. Counsel's presence is a necessity if the accused is to have a fair opportunity to present his defense at the trial itself. The presence of counsel preserves the adversary process, either by counterbalancing the overreaching of the State or by compensating for the advantages enjoyed by the prosecuting authorities. *Ash,* 413 U.S. at 314, 93 S.Ct. at 2576.

■ No United States Supreme Court opinion addresses the question of whether the selection of a judge prior to any other proceedings but after the right to counsel has attached constitutes a critical stage of the proceedings. In ascertaining whether to extend the right to counsel into a new context, the court has consistently applied a historical interpretation of the guarantee, requiring the presence of counsel only when the new context presents the same dangers as gave birth initially to the right itself. *Ash,* 413 U.S. at 312, 93 S.Ct. at 2575. The court has also recognized that when a subsequent trial will cure a one-sided confrontation between prosecuting authorities and an uncounseled defendant, the stage is not a critical one. *Id.* at 316, 93 S.Ct. at 2577.[1]

■ The special judge selection process at issue has none of the indicia of a critical stage. It is not an adversarial or fact-finding proceeding and cannot even be said to constitute a confrontation between the defendant and the State. And, none of the defendant's other constitutional trial rights are threatened with risk of loss. A defendant who makes what might later be perceived as an unwise strike will not be deprived of the ability to test the State's case through cross-examination nor will he have been called upon to incriminate himself, and his ability to present a defense will not have been compromised if he does not make a wise choice in his selection.

Moreover, counsel's absence from the process in no way derogates from the defendant's right to a fair trial. There is little if any risk of manipulation or overreaching by the State for the membership of the panel is entirely controlled by the presiding trial judge. Indiana Criminal Rule 13 dictates that the prosecution shall strike first; hence, regardless of whether the defendant is represented in his striking, he will still have the choice between the two judges who remain. The State has not gained any unfair advantage it would not otherwise have had; indeed, it is in exactly the same position it would have been in had the defendant been represented.

Staley readily admits that he is not really seeking protection from his adversary but

---

1. The determination of whether an event is a critical stage in the proceedings establishes only whether constitutional error has occurred but reversal is not necessitated in all cases. This type of Sixth Amendment error is analyzed to ascertain whether the error is harmless beyond a reasonable doubt. *See e.g., Gilbert v. California* (1967), 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; *United States v. Wade* (1967), 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149.

the benefit of counsel's judgment. The right to counsel is not a generalized protection for all purposes but a safeguard of the right to a fair trial. If a defendant, unaided by counsel, makes a choice which results in his selection of a judge who ultimately proves to be partial or biased such that he is deprived of a fair trial, protection remains for him under the cloak of the Due Process Clause. The risks associated with the unadvised selection of a special judge are plainly not so pernicious as to require an extraordinary Sixth Amendment safeguard. Given the limited function of the striking procedure, to permit a defendant the opportunity to obtain a judge with whom he is comfortable, and its nonadversarial character, we conclude that the special judge selection process envisioned by Crim.R. 13 does not present a high probability of substantial harm to a defendant should counsel not be present when the selection occurs which will not be cured by the trial itself, and hence, that the selection of a special judge is not a critical stage in the proceedings requiring the presence of counsel.

## II.

Staley also challenges the sufficiency of the evidence to sustain his conviction. He maintains that the testimony of Officer Green which was used by the State to identify Staley as the driver of the vehicle pursued by Green was contradictory and insufficient to prove beyond a reasonable doubt that Staley was the driver of the vehicle. He also argues that the evidence was insufficient to prove he was intoxicated at the time he allegedly drove the vehicle and that the State failed to produce proof beyond a reasonable doubt that he knew he had either visibly or audibly been ordered to stop by a law enforcement officer.

When reviewing the sufficiency of the evidence, we adhere to a strict standard of review. We will uphold the conviction if substantial evidence of probative value exists to support each element of the conviction beyond a reasonable doubt. *Fleck v. State* (1987), Ind., 508 N.E.2d 539, 540; *Fox v. State* (1987), Ind., 506 N.E.2d 1090, 1097. We neither reweigh the evidence nor judge witness credibility, and only view that evidence which supports the verdict. *Id.* A conviction may be supported by circumstantial evidence alone. *Sayles v. State* (1987), Ind.App., 513 N.E.2d 183, 187, *trans. denied.*

■ We find the record to contain ample proof of Staley's identity as the driver of the vehicle. Deputy Sheriff Green testified that he and Staley knew each other from prior contacts. Deputy Green had a conversation with Staley as Staley and three others exited the white Nissan registered to Staley's parents and warned Staley on this first occasion when he had observed Staley driving the vehicle in an intoxicated condition not to drive the car again. About fifteen minutes later, the officer observed the car pulling out of the fairgrounds and this time it only had one occupant, the driver whom the officer observed to be Staley. Deputy Green pursued Staley, who pulled into a church parking lot, abandoned the car and fled on foot. Deputy Green thus had a third opportunity to identify Staley, and he reported to the jury that he did so identify Staley. Trooper Watson, who had been friends with Staley since junior high school, apprehended Staley near the church parking lot about an hour and one-half later. Staley admitted to Trooper Watson that he had been drinking, that he had been driving the vehicle, that he had "takin off" from Deputy Green and that he knew Deputy Green had been pursuing him.

■ The evidence as to Staley's intoxication at the time he was driving the car is likewise sufficient. Deputy Green testified that when he first encountered Staley and spoke with him at 3:42 a.m. on the morning in question, Staley was having trouble standing on his own, his eyes were bloodshot, his speech was slurred, and he had a strong odor of alcohol on his breath. In Deputy Green's words, he "noticed they were intoxicated [and] that they had no business in driving the car." Two other officers who had contact with Staley at the time of his arrest testified as well that Staley had an odor of alcohol coming from his person, his eyes were bloodshot and he was belligerent. A breath sample given by Staley two hours after Deputy Sheriff Green observed Staley driving the car showed a blood alcohol level by weight of .14

percent. Although the level of alcohol in Staley's blood two hours later may not conclusively establish the level in his blood when he was driving the car, it is some of evidence of probative value tending to corroborate Deputy Green's observation that Staley was intoxicated. Similarly, Staley's flight after having been specifically warned that he was too intoxicated to drive permits an inference that Staley himself knew he was too intoxicated to be driving without violating the law. Certainly, a reasonable person could conclude from the officer's testimony that Staley was having difficulty standing that Staley was in an impaired condition of thought and action and had lost the normal control of his faculties to such an extent as to endanger another person. Ind.Code 9–13–2–86. *Cf. Platt v. State* (1992), Ind., 589 N.E.2d 222, 227 (evidence Platt continued to drive for quarter of mile after officer had activated lights, smelled of alcohol, had bloodshot eyes, had BAC of .17% one-half hour after he had been observed driving, and appeared confused, coupled with videotape of field sobriety tests met definition of intoxicated).

Finally, we find evidence in the record to sustain the jury's conclusion that Staley knew he was audibly or visually being ordered to stop by a law enforcement officer. See I.C. 35–44–3–3(a)(3). Staley knew before he departed the fairgrounds that Deputy Green was watching his car and that Deputy Green was a police officer. Staley abandoned his car in the church lot as Deputy Green approached and began running, leaving his car door open. Deputy Green did not have his lights flashing or siren activated when he was following Staley for a quarter of a mile but he was in a marked squad car. When Staley fled, Deputy Green directed Staley over the squad car's external loudspeaker to stop several times. Staley admitted to Trooper Watson when he was apprehended that he had "takin off" from Deputy Green and that he knew Deputy Green had been pursuing him. Thus, the evidence establishes that Deputy Green had identified himself as a law enforcement officer, that Staley knew Deputy Green to be a law enforcement officer when he fled, that Deputy Green had ordered Staley to stop by audible means, and that Staley knew the officer had

ordered him to stop. The evidence is thus sufficient to support the conviction of resisting law enforcement.

Judgment affirmed.

BAKER, J., concurs.

SHARPNACK, C.J., concurs in result.