**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Aug 28 2013, 5:51 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VICTORIA L. BAILEY**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MICHAEL PACE,                                )
                                             )
    Appellant-Defendant,             )
                                             )
       vs.                      )    No. 49A04-1302-CR-77
                                             )
STATE OF INDIANA,                            )
                                             )
    Appellee-Plaintiff.              )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-1112-FA-89450

**August 28, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Michael Pace ("Pace") appeals, following a jury trial, his convictions for two counts of child molesting,[1] each as a Class B felony, raising the following restated issue: whether the trial court abused its discretion by excluding evidence that Pace contends reveals the complaining witness had ulterior motives for making the criminal allegations.

We affirm.

## FACTS AND PROCEDURAL HISTORY[2]

On November 14, 2011, Pace, who was nineteen years old at the time, moved into the home of his uncle, M.B. M.B. shared a home in Indianapolis with his girlfriend, S.H., S.H.'s daughter, and S.H.'s eight-year-old son, D.H. Initially, Pace slept on the couch; however, after about a week, the family set up a cot for Pace in D.H.'s bedroom.

Pace usually arrived home from work around 2:45 a.m. Every weeknight for about a month, Pace would enter the bedroom, wake D.H., and force him to perform oral sex on Pace. Pace told D.H. not to tell anyone. The night of December 21, 2011, after Pace had forced D.H. to perform oral sex, Pace made D.H. get Pace's gun, which was in a case on top of a filing cabinet in the bedroom. Pace unzipped the case, removed the gun from its holster, and pointed the gun at D.H. Pace then put the gun back in the holster.

---

[1] *See* Ind. Code § 35-42-4-3.

[2] The record on appeal in this case was prepared pursuant to the Indiana Supreme Court's "Order Establishing the Indiana Court Reporting Pilot Project for Exploring the Use of an Audio/Visual Record on Appeal[,]" issued on September 18, 2012, and effective on July 1, 2012. *See In Re Pilot Project for Audio/Visual Recordings In Lieu of Paper Transcripts in the Preparation of the Record and Briefing on Appeal*, 976 N.E.2d 1218 (Ind. 2012). We are grateful for the ongoing cooperation of the Honorable Mark D. Stoner of Marion Superior Court, the Marion County Public Defender Agency, and the Office of the Indiana Attorney General in the execution of this pilot project.

The next day, D.H. reported the abuse to a counselor at school. The school, in turn, called the police. After an investigation into the matter, Pace was arrested and charged with five counts of child molesting, four as Class B felonies and one as a Class A felony for the reason that Pace committed the crime "by using or threatening the use of deadly force." *Appellant's App.* at 51.

During a deposition prior to trial, Pace asked D.H. whether he had ever been accused of running away from home.[3] D.H. responded, "No." (A/V Rec. No. 1; 01/07/13; 14:59:07). Pace later asked D.H. if he had been in trouble at school, and D.H. admitted that he had. When Pace asked D.H. additional questions, D.H. said that he did not want to talk about it. Pace did not ask D.H. any more questions about problems at school.

Prior to trial, Pace filed with the court an exhibit list that included two exhibits: Exhibit A, an incident report from D.H.'s school showing that D.H. had been suspended from school from October 26, 2011 through November 10, 2011 because he brought a knife to school; and Exhibit B, records from the Indianapolis Metropolitan Police Department showing that D.H. had run away from home on September 18, 2011, September 25, 2011, and October 27, 2011. All of the incidents referenced in the two exhibits occurred before Pace moved into D.H.'s home.

The State filed two motions in limine. Each motion requested that "defendant, his counsel, and any other witnesses be instructed not to mention or in any way refer to"

---

[3] D.H.'s deposition is not in the record before us; therefore, we rely on the way in which parties characterized D.H.'s deposition at trial.

certain matters until a hearing could be held outside the presence of the jury "to determine the relevancy [of such matters] to the issues formulated by the information(s) and the not-guilty plea." *Appellant's App*. at 135, 152. The State's first motion, in pertinent part, sought to exclude evidence of D.H. being a runaway. Pace objected to the exclusion of this evidence on the basis that D.H.'s deposition testimony on this subject called into question D.H.'s credibility. The trial court questioned whether this was a collateral matter, and after hearing arguments from the parties, granted the State's motion in limine over defendant's objection. In its second motion in limine, the State, in pertinent part, sought to exclude evidence of D.H.'s school suspension because it was imposed "outside of the period during which the molest [sic] occurred." *Id*. at 135, 152. Pace again argued against the exclusion of this evidence, contending that it was necessary to attack D.H.'s credibility. The trial court took the State's second motion under advisement. *Appellant's App*. at 16, 17.

Pace's two-day jury trial began on January 7, 2013. Following the State's direct examination of D.H., Pace asked for a bench conference. The trial court then excused the jury to address matters previously raised in the State's motions in limine, *i.e.*, whether to allow evidence that D.H. had been suspended from school and had run away from home. In this hearing, the trial court repeatedly asked Pace how evidence of these matters made D.H. more or less credible. Pace stated that he had asked D.H. about these two matters during deposition and that D.H. had employed "outright deception" on the question of whether he had been accused of running away and had refused to talk about the school suspension. (A/V Rec. No. 1; 01/07/13; 14:53:09—56:29). The State disagreed and

supported its point by briefly reading and summarizing some of D.H.'s deposition testimony.

As follow-up, the trial court, questioning how this evidence was relevant to the issue of D.H.'s credibility, asked Pace if D.H. had lied during the deposition. Pace referred to page ten of D.H.'s deposition and noted that, when D.H. was asked, "Did anybody accuse you of trying to run away from home," D.H. had responded, "No." (A/V Rec. No. 1; 01/07/13; 14:58:38-15:00:33). Clarification was offered by the State that Pace had not asked D.H. whether he had actually run away; instead, D.H. was asked if he had been *accused* of running away. It was the State's position that D.H. had truthfully answered the question. (A/V Rec. No. 1; 01/07/13; 14:55:53-15:01:35).

Regarding the school suspension evidence, the State noted that D.H. had not lied during questioning, but instead had admitted that he had gotten into trouble at school but did not want to talk about it. The trial court asked Pace how he wanted to cross-examine D.H. in light of the fact that D.H. had admitted that he had been suspended from school. Pace responded that D.H.'s answer goes to the issue of the jury weighing D.H.'s credibility. The court disagreed, finding that Pace's argument was not one of credibility, but instead a 404(b) argument, *i.e.*, "[D.H.] did this; therefore you shouldn't believe him about something else." (A/V Rec. No. 1; 01/07/13; 15:06:09). Pace conceded that D.H. was not lying when he talked about the school suspension; nevertheless, when the trial court concluded that the evidence regarding the school suspension did not go to credibility, Pace again asserted his belief that "it goes to the child's propensity for truthfulness." (A/V Rec. No. 1; 01/07/13; 15:08:43-10:10).

5

After hearing the parties' arguments, the trial court ruled to exclude Exhibits A and B and evidence related thereto. Notwithstanding these rulings, the trial court advised Pace that he could explore the question of whether D.H. had ever told a lie and what happened if he did. (A/V Rec. No. 1; 01/07/13; 15:13:09). Pace did exactly that, and during cross-examination asked D.H. if he had ever been caught in a lie. D.H. admitted that he had, and when asked how his parents dealt with D.H. if he lied, D.H. testified that his mother would ground him and his father would swat him with a belt. Pace then took the stand in his own defense.

The jury found Pace guilty of a Class B felony under Count V and a Class B felony, as a lesser included offense under Count I, but hung on the remaining three counts. At the sentencing hearing, the State agreed to dismiss Counts II, III, and IV, and the trial court imposed an aggregate sentence of ten years, of which three years were suspended to probation. Pace now appeals. Additional facts will be added as necessary.

## DISCUSSION AND DECISION

Pace contends that the trial court abused its discretion when it excluded evidence relating to his proposed Exhibits A and B. Specifically, Pace contends that this evidence would have revealed D.H.'s ulterior motives in charging Pace with these crimes because it would have "'tend[ed] . . . to show [D.H.'s] interest, bias, or motives.'" *Appellant's Br.* at 8 (quoting *Shanholt v. State*, 448 N.E.2d 308, 316 (Ind. Ct. App. 1983)).

The decision to admit or exclude evidence is within the trial court's sound discretion and is afforded great deference on appeal. *Fugett v. State*, 812 N.E.2d 846, 848 (Ind. Ct. App. 2004). "We will generally not reverse a trial court's exclusion of

6

evidence except when the exclusion is a manifest abuse of discretion resulting in a denial of a fair trial." *Id.* "An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court." *Id.* This court will also find an abuse of discretion when the trial court controls the scope of cross-examination to the extent that a restriction substantially affects the defendant's rights. *Id.*

During trial, the trial court ruled to exclude Exhibit A and related evidence showing that D.H. had been suspended from school, finding that the incident was barred by Indiana Rule of Evidence 404(b),[4] and that even if it were not, the prejudicial value of the evidence outweighed its probative value. (A/V Rec. No. 1; 01/07/13; 15:07:19). The trial court, likewise, ruled to exclude Exhibit B and the evidence regarding D.H. having been a runaway, finding that Exhibit B "addressed a collateral issue and was not admissible under Indiana Rule of Evidence 609 because 'being a runaway is not a 609 offense . . . .'"[5] (A/V Rec. No. 1; 01/07/13; 15:11:51). Pace does not address these issues; instead, he contends that the trial court abused its discretion in excluding Exhibits A and B because the evidence of D.H.'s school suspension and his having been a runaway "would have suggested" or tended to show an ulterior motive for D.H. to allege that he was molested by Pace. *Appellant's Br.* at 12.

---

[4] Evidence Rule 404(b) provides in pertinent part, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

[5] Evidence Rule 609(a) provides in pertinent part: "For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime or an attempt of a crime shall be admitted but only if the crime committed or attempted is . . . a crime involving dishonesty or false statement."

The State contends that Pace has waived this issue on appeal. At trial, Pace argued that Exhibits A and B were relevant to attack D.H.'s credibility. Pace did not claim that the desired evidence, used on cross-examination, was intended to show bias, prejudice or an ulterior motive on the part of D.H.[6] Our Supreme Court has said that "[g]rounds for the admission of evidence which are urged on appeal must be the same as those presented at trial." *Fox v. State*, 506 N.E.2d 1090, 1093 (Ind. 1987). Recognizing that he may have waived this issue on appeal, Pace contends that the exclusion of this evidence constituted fundamental error because it denied him his Sixth Amendment right to effectively cross-exam D.H. as to his ulterior motive for accusing Pace. Assuming without deciding that Pace has preserved the issue of ulterior motive on appeal, we conclude for the following reasons that the trial court did not abuse its discretion when it excluded evidence regarding D.H.'s school suspension and his having run away from home.

Pace correctly notes that evidence of a witness's bias, prejudice or ulterior motives is relevant at trial. *Appellant's Br*. at 8 (citing *Shanholt*, 448 N.E.2d at 316). "Indiana Evidence Rule 616 explicitly makes 'evidence of bias, prejudice, or interest of the

---

[6] Pace asserts that he did not waive the ulterior motive issue on appeal and contends that the State's assertion of waiver "is based on an apparent misapprehension of the nature of Pace's argument." *Appellant's Reply Br.* at 1. Pace offers that "the entirety of [his] argument on appeal is a challenge to the trial court's decision to exclude evidence." *Id*. Accordingly, he maintains that the inquiry as to waiver should focus on whether he made an offer to prove, which Pace claims he did. "The purpose of an offer to prove is to enable the trial court and this court to determine the admissibility and relevance of the proffered evidence." <u>Carter v. State</u>, 932 N.E.2d 1284, 1287 (Ind. Ct. App. 2010). Here, there was no need to make an offer to prove; it was clear what evidence Pace intended to admit. Therefore, the question of waiver does not, as Pace contends, turn on Pace's failure to make an offer of proof, but instead, on whether the "[g]rounds for the admission of evidence" that Pace argues on appeal are the same as those presented at trial. *Fox v. State*, 506 N.E.2d 1090, 1093 (Ind. 1987).

witness for or against any party' relevant and admissible for impeachment purposes, as this evidence can impact the weight of the witness's testimony." *Konopasek v. State*, 946 N.E.2d 23, 27-28 (Ind. 2011). "Not only is such evidence merely allowed by Indiana law, it has been held that a party has a right to cross-examine an opposing party's witness on matters which tend to impair that witness's credibility or to show her interest, bias, or motives.'" *Appellee's Br.* at 8 (quoting *Shanholt*, 448 N.E.2d at 316). That being said, Pace has failed to show at trial or on appeal how the excluded evidence is even relevant to whether or not D.H. had any reason to falsely accuse Pace of these crimes.

Pace cites various cases to illustrate instances where a victim may have had an ulterior motive for accusing a defendant of criminal conduct. In *Zawacki v. State*, the defendant sought to admit evidence that the alleged victim in a sexual misconduct case had asked defendant's permission to engage in a relationship with defendant's daughter and that the defendant refused that request. 753 N.E.2d 100, 103 (Ind. Ct. App. 2001), *trans. denied*. In *Marshall v. State*, the defendant sought to introduce evidence to support his theory that the alleged victim fabricated her story of child molestation because she was angry with the defendant for failing to complete a drug deal involving victim's husband that allegedly would have earned them thousands of dollars. 893 N.E.2d 1170, 1177 (Ind. Ct. App. 2008). Finally, in *Kirk v. State*, the defendant sought to introduce evidence that the victim of sexual assault falsely accused Kirk because he had refused to impersonate the victim's father in order to allow the victim to regain admittance to school after a suspension. 797 N.E.2d 837, 840 (Ind. Ct. App. 2003), *trans. denied*. The instant case contains no such similar facts. D.H.'s suspension and history as a runaway all

9

occurred before Pace moved into D.H.'s home; additionally, there is no evidence that Pace had any knowledge of or connection with these events at any time. Pace has shown us no reason why, in light of these events, D.H. would have had an incentive to falsely accuse Pace of child molesting.

We find Pace's argument regarding ulterior motive more closely resembles a request that we address whether the excluded evidence was properly excluded under Indiana Evidence Rule 404(b). On appeal, Pace maintains that the trial court abused its discretion in precluding the admission of Exhibits A and B because those exhibits "show an escalating pattern of problematic behavior from [D.H.]." *Appellant's Br.* at 11. Indiana Evidence Rule 404(b) provides in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. . . .

The trial court did not abuse its discretion by refusing to let Pace introduce evidence of D.H.'s suspension or his having been a runaway to show that D.H. was a troubled child who had acted badly before. The only possible reason for introducing this evidence was to suggest to the jury that, in light of D.H.'s prior bad acts, the jury could not trust D.H.'s current testimony regarding his accusations about Pace. The excluded evidence was correctly characterized by the trial court as Rule 404(b) evidence, and the trial court properly excluded it.

Notwithstanding the exclusion of Exhibits A and B, Pace was able to effectively cross-examine D.H. regarding his credibility. After ruling that Exhibits A and B would be excluded, the trial court advised Pace that he could explore the question of whether

D.H. had ever told a lie and what happened if he did. (A/V Rec. No. 1; 01/07/13; 15:13:09). Pace did exactly that and, during cross-examination, asked D.H. if he had ever been caught in a lie. D.H. admitted that he had, and when asked how his parents dealt with D.H. if he lied, D.H. testified that his mother would ground him and his father would swat him with a belt. In this way, Pace was able to effectively cross-examine D.H.

Finding that the trial court did not abuse its discretion in excluding evidence that D.H. had been suspended and had run away, we affirm Pace's convictions.

Affirmed.

MAY, J., and BRADFORD, J., concur.