CHARLES EDWARD EPPS *v.* STATE OF INDIANA.

[No. 476S97. Filed November 8, 1977.]

*Susan R. Porter*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *John P. Avery*, Deputy Attorney General, for appellee.

HUNTER, J.—The defendant, Charles Edward Epps, was charged by indictment with the first-degree murder of Jewell Hall. The defendant was tried before a jury, which returned a verdict of guilty of second-degree murder. The trial court entered judgment on this verdict and sentenced the defendant to not less than fifteen nor more than twenty-five years' imprisonment. From this judgment the defendant appeals, raising the following issues:

1. Whether the trial court erred in denying the defendant's motion for change of venue;

2. Whether the trial court erred in admitting certain autopsy photographs;

3. Whether the trial court erred in admitting opinion testimony based upon the work of a third person;

4. Whether the trial court erred in admitting opinion testimony without a proper foundation;

5. Whether the trial court erred in giving an instruction concerning flight; and

6. Whether the jury's verdict is supported by sufficient evidence.

## I.

The defendant was charged by indictment on June 26, 1974, and pleaded not guilty on June 27, 1974. On April 25, 1975, the defendant moved for a change of venue from the county, based upon his belief that he could not receive a fair trial due to the excitement or prejudice against him. No response was made by the prosecutor and no hearing was had. The same day the motion was filed, it was overruled. The defendant contends that it was reversible error for the trial court to overrule his motion for change of venue without a hearing citing *Hanrahan* v. *State*, (1968) 251 Ind. 325, 241 N.E.2d 143.

The instant case differs from *Hanrahan* in an important particular. That case involved a motion for change of venue which was "timely filed." In this case, the defendant moved for a change of venue ten months from the date of his arraignment. At that time a trial had been scheduled for May 12, eighteen days from the date of the motion for change of venue. Our criminal rules provide the following:

"In any criminal action, no change of judge or change of venue from the county shall be granted except within the time herein provided.

"An application for a change of judge or change of venue from the county shall be filed within ten [10] days after a plea of not guilty, or if a date less than ten [10] days from the date of said plea, the case is set for trial, the application shall be filed within five [5] days after setting the case for trial. Provided, that where a cause is remanded for a new trial by the Supreme Court, such application must be filed not later than ten [10] days after the party has knowledge that the cause is ready to be set for trial.

"Provided, however, that if the applicant first obtains knowledge of the cause for change of venue from the judge

or from the county after the time above limited, he may file the application, which shall be verified by the party himself specifically alleging when the cause was first discovered, how it was discovered, the facts showing the cause for a change, and why such cause could not have been discovered before by the exercise of due diligence." Ind. R. Crim. P. 12.

The defendant's motion contained no allegation of when the cause for the motion was discovered, how it was discovered, the facts showing cause or why cause could not have been discovered before by the exercise of due diligence. Neither does the record reveal a request for a hearing. There was, therefore, no error in overruling the motion for change of venue without a hearing. *Nelson* v. *State*, (1972) 259 Ind. 339, 287 N.E.2d 336.

## II.

During the trial, several photographs of the deceased victim were admitted into evidence, over the defendant's objection that a proper foundation had not been laid that these photographs were a true, accurate and fair representation of the object photographed. The victim's nephew identified four of the six photographs, as being of Jewell Hall. He also stated that these photographs were true and accurate. A pathologist testified that the numbers on the exhibits corresponded to the autopsy report on Jewell Hall. He also stated that the pictures were taken at Marion County General Hospital where autopsies were performed. Additionally, we note that these photographs are cumulative and explanatory of testimony from the witness stand concerning the infliction of numerous blows to the head. We find no reversible error. *Johnson* v. *State*, (1972) 258 Ind. 648, 283 N.E.2d 532.

## III.

In his brief, the defendant argues that it was improper for the court to allow a Dr. Benz to give an opinion, based upon the autopsy report of another physician, since deceased, as to the cause of death of Jewell Hall. The record reveals that no objection was made to this testimony. An objection was made and sustained as to an opinion on the manner of death. A contemporaneous objection is a necessary prerequisite to preserving an issue for review. *Maldonado* v. *State,* (1976) 265 Ind. 492, 355 N.E.2d 843.

## IV.

During the testimony of Sgt. Charles Caine, an opinion was given as to the type of instrument used to sever the telephone wires at the victim's residence. The testimony was received over an objection that Sgt. Caine was not qualified to give expert testimony.

The determination of whether a witness is qualified to testify as an expert is within the sound discretion of the trial court, whose ruling will not be disturbed absent an abuse of that discretion. *Pettit* v. *State,* (1972) 258 Ind. 409, 281 N.E.2d 807. The professional qualifications of an expert witness may be established by practical experience as well as by formal training. *Guyton* v. *State,* (1973) 157 Ind. App. 59, 299 N.E.2d 233.

Sgt. Caine testified that he began his study of tool mark identification in 1962, that he studied with various laboratory experts and had read certain specialists' publications dedicated to tool mark and firearms identification. He also testified that he had worked daily in tool mark and firearms identification since 1962. This testimony clearly established Sgt. Caine's professional qualifications.

## V.

██ The following instruction was given over the defendant's objection:

"The flight of a person immediately after the commission of a crime, though not proof of guilt, is evidence of consciousness of guilt *and thus guilt itself* and is a circumstance which may be considered by you in connection with all the other evidence to aid you in determining the question of guilt or innocence." [Emphasis added.]

The defendant argues that the italicized language invades the province of the jury to determine the facts. The trial court also gave an introductory charge which was, in part, as follows:

"In discharging this duty the Court has no right to assume, and does not assume that any fact or facts will be established or not established, it being your exclusive right and duty under the constitution of the State of Indiana to determine from all of the evidence what has and what has not been proven."

Four other instructions advised the jury that they alone determine the weight and credit to be given to any testimony, as well as another which advised the jury that the trial court intended to express no opinion on the evidence through its rulings. An instruction was also given advising the jury to construe all instructions together. Although the court's flight instruction is not as carefully worded as is possible, we believe that any error contained in that instruction was cured by other instructions given by the trial court.

## VI.

The defendant contends that there was not sufficient evidence to support the jury's verdict finding the defendant guilty of second-degree murder.

When reviewing the sufficiency of the evidence, this Court does not reweigh the evidence or the credibility of the wit-

nesses. Looking at the evidence most favorable to the verdict, we determine whether there was evidence of probative value to support each element of the verdict. *Daniels* v. *State,* (1976) 264 Ind. 490, 346 N.E.2d 566; *Gaddis* v. *State,* (1969) 253 Ind. 73, 251 N.E.2d 658.

The record reveals the following evidence: The defendant and the deceased were previously married and divorced. The victim's nephew was awakened by the noise of an argument on the night of April 6, 1974, and after dressing he saw the defendant and the deceased arguing in the kitchen. He also saw a hatchet beside the sink at that time. The nephew discovered that the telephone was inoperative, and he went to a neighbor's house to summon help. When he returned, his aunt lay dead in the kitchen; the defendant and the hatchet were gone. There was evidence that the telephone lines had been intentionally cut and that the deceased died as the result of the trauma of multiple blows to the head. The instrument used was a narrow and sharp object which could have been a meat cleaver, axe, or hatchet, in the opinion of a pathologist. There was also evidence of discord between the defendant and the deceased which did not end when they were divorced.

From this evidence the jury could have inferred that it was the defendant who wielded an axe resulting in death of Jewell Hall. From the use of a deadly weapon in a manner likely to cause death, the jury could infer malice. There was, therefore, sufficient evidence to support the jury's verdict.

For all the foregoing reasons, we find that the judgment of the trial court should be affirmed.

Judgment affirmed.

Givan, C.J., DeBruler and Pivarnik, JJ., concur; Prentice, J., concurs in result.

NOTE.—Reported at 369 N.E.2d 404.