**Melvin KLOPFENSTEIN, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee.**

No. 2–681A193.

Court of Appeals of Indiana, Second District.

Sept. 21, 1982.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Aimee L. Kolze, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Melvin Klopfenstein (Klopfenstein) appeals from two Class D felony convictions, one for carrying a handgun without a license[1] and the other for possession of more than two grams of hashish.[2]

---

1. I.C. 35–23–4.1–3 (Burns Repl.1979) provides:
 "Except as provided in section 4 of this Chapter, no person shall carry a handgun in any vehicle or on or about his person, except in his place of abode, on his property or fixed place of business, without a license issued under this Chapter."
 I.C. 35–23–4.1–18(c) makes violation of section 3 a Class A misdemeanor. If the person has a prior felony conviction, however, the offense is a Class D felony.

2. I.C. 35–48–4–11 (Burns Repl.1979) provides in part:
 "A person who:
 (1) Knowingly or intentionally possesses ... hashish; ...
 commits possession of ... hashish, a class A misdemeanor. However, the offense is a class D felony (i) if the amount involved is more than ... two [2] grams of hashish, ..."

The following issues are presented for review:

I. Whether the trial court erred in finding Klopfenstein guilty of carrying a handgun in a vehicle without a license;

II. Whether the trial court erred in finding Klopfenstein guilty of a Class D felony under the Firearms Act because Klopfenstein's prior felony conviction had not been conclusively established;

III. Whether the trial court committed error in admitting evidence obtained as the result of a search incident to an arrest;

IV. Whether the chain of custody was sufficiently established to allow the admission into evidence of an exhibit; and

V. Whether the trial judge abused his discretion in admitting the opinion testimony of an expert witness. We affirm.

Shortly after midnight on December 15, 1979, Officer William Owensby received a radio broadcast regarding two shooting incidents on the south side of Indianapolis. He was instructed to be on the lookout for a vehicle described as a white over black Cadillac El Dorado dating from approximately 1974 and containing four white males. The officer saw a black over white Cadillac El Dorado with four white males inside. While he was still following the vehicle, he radioed in. By the time he stopped the vehicle, other officers had arrived at the scene.

Owensby approached the vehicle and ordered the occupants out. He observed two shotguns in plain view inside the car, one in the front seat in the driver's area and the other across the laps of the two passengers in the back seat. Owensby further observed a pistol fall out of the car when the passenger in the front seat alighted.

While the other officers detained the car's occupants, Owensby searched the car. As he looked in, he saw the butt of what appeared to be a pistol protruding from directly beneath the driver's seat.

Owensby then arrested the occupants of the car, including Klopfenstein, the driver of the car. He searched Klopfenstein's person and found a closed Tylenol pill bottle in a clear plastic bag. Pills were in the bottom of the plastic bag. Officer Owensby removed the Tylenol bottle from the plastic bag and opened it. He discovered several lumps of a greenish-brown substance later chemically identified as 2.2 grams of hashish.

### I.

Klopfenstein first contends that the trial court erred in finding him guilty of carrying a handgun in a vehicle. He contends that the state failed to prove the element of "carrying" within the meaning of I.C. 35–23–4.1–3. *See* note 1, *supra*. He asserts that the state failed to prove beyond a reasonable doubt that he had any control of the pistol found underneath the driver's seat of the vehicle.

To prove the offense of carrying a handgun in a vehicle, the state must offer evidence that a handgun was found in a vehicle and that the defendant had control of either the weapon or of the vehicle with knowledge of the weapon's presence. This follows from the plain words of the statute: "[N]o person shall carry a handgun in any vehicle *or* on or about his person ...." I.C. 35–23–4.1–3 (emphasis added). In addition, to support a conviction of carrying a handgun in a vehicle, evidence must be introduced from which the trier of fact could reasonably infer an intention to convey or transport the weapon from one place to another. *State v. Cox* (1st Dist. 1973) 156 Ind.App. 548, 297 N.E.2d 920. Here, Klopfenstein was driving the car just before Officer Owensby stopped it. Shortly thereafter, Owensby discovered two handguns in the car. The evidence introduced was sufficient to establish the element of intention to convey.

Klopfenstein nevertheless contends that the state failed to prove that he had custody, control or possession of the handgun sufficient to support the element of carrying "a handgun in any vehicle." I.C. 35–23–4.1–3. He asserts that Indiana case law indicates that more than mere presence in an automobile is necessary to establish control over the weapon.

This statement is accurate as far as it goes. A review of the case law, however, reveals that mere presence *of a passenger* in a car in which a handgun is being transported is insufficient to find that passenger guilty of carrying a handgun in a vehicle or on or about his person. *See Frasier v. State* (1974) 262 Ind. 59, 312 N.E.2d 77, *cert. denied,* 419 U.S. 1092, 95 S.Ct. 686, 42 L.Ed.2d 686; *Johnson v. State* (1969) 252 Ind. 79, 246 N.E.2d 181, *rehearing denied; Johnson v. State* (3d Dist. 1975) 163 Ind.App. 684, 325 N.E.2d 859. *Compare Beck v. State* (1st Dist. 1981) Ind.App., 414 N.E.2d 970. The driver of a vehicle, however, is in violation of the statute if he conveys a handgun in the vehicle regardless of whether it is on or about his person. Knowledge of the presence of the handgun is all that is required. Here, Klopfenstein was the driver of the vehicle and, therefore, need not have been found to be carrying the handgun on or about his person in order to be found in violation of the statute.

After the occupants of the vehicle alighted, Officer Owensby discovered four firearms which were or had been in the vehicle. Two of them were handguns. The police officer testified that he observed the butt of a pistol protruding from the floor directly beneath the driver's seat. In *Phillips v. State* (3d Dist. 1974) 160 Ind.App. 647, 651, 313 N.E.2d 101, 103, the Court noted in an analogous case of constructive possession of a controlled substance: "While an accused must have actual knowledge of the presence of the item and of the items' character, this knowledge can be inferred from the fact that the item was found in a place under his dominion and control."

We conclude that the facts here were sufficient to establish the offense of carrying a handgun in a vehicle.

## II.

Klopfenstein contends the trial court committed reversible error in finding him guilty of a Class D felony under the Firearms Act. I.C. 35–23–4.1–18 (Burns Supp. 1981) provides in part:

"(c) A person who violates section 3 [35–23–4.1–3] or section 17 [35–23–4.1–17] of this chapter commits a Class A misdemeanor. However, the offense is a Class D felony if the person has a prior conviction of any offense under this subsection, or if the person has been convicted of a felony within fifteen (15) years before the date of the offense."

The trial court found Klopfenstein guilty of carrying an unlicensed handgun, "a Class D felony."

The state attempted to prove that Klopfenstein had a prior felony conviction through the testimony of Police Officer Goss. Goss testified that he had been involved in an investigation concerning Klopfenstein in 1977. He testified Klopfenstein was charged with possession of methaqualone. The state also relied upon the certified docket entry of the judgment for the prior conviction. The docket entry revealed that Klopfenstein pleaded guilty as charged to a violation of the Indiana Controlled Substances Act. The docket entry was dated August 5, 1977. According to the entry, Klopfenstein was sentenced to serve one year with all but thirty days of the sentence suspended.

Klopfenstein argues that both Officer Goss' testimony and the certified order book entry are inconclusive in establishing whether the prior conviction was a misdemeanor or a felony. In particular, Klopfenstein emphasizes the following testimony by Officer Goss:

"Q. But, you don't know whether he was, by the Court's records, found guilty of a felony or misdemeanor, do you?

A. The only thing I have to go by is that copy." (Record at 120.)

Klopfenstein acknowledges that Officer Goss' testimony established that the original investigation dealt with possession of methaqualone. He also concedes that the certified copy of the court record shows that the charge involved was a violation of the Indiana Controlled Substances Act, I.C. 35–24.1–1–1 *et seq.* (Burns Ed. 1975) (cur-

rent version at I.C. 35–48–1–1 *et seq.* (Burns Repl.1979), and that he was found guilty *as charged* and sentenced to one year imprisonment with all but thirty days suspended. He asserts, however, that the certified copy does not indicate whether he was convicted of a felony or a misdemeanor.

Both the state and the defendant base their arguments on the sentencing provisions of the present criminal code. Both parties failed to take into account the effective date of the revisions to the penal code. Acts 1977, P.L. No. 340, § 150 states in part:

"(a) Neither this act nor Acts 1976, P.L. 148 affects:

(1) right or liabilities accrued;

(2) penalties incurred; or

(3) proceedings begun;

before October 1, 1977. Those rights, liabilities, and proceedings are continued, and penalties shall be imposed and enforced as if this act and Acts 1976, P.L. 148 had not been enacted.

(b) An offense committed before October 1, 1977, under a law repealed by Acts 1976, P.L. 148 shall be prosecuted and remains punishable under the repealed law."

■ Klopfenstein's sentencing for the possession of methaqualone offense took place on August 5, 1977. Thus, he was prosecuted under the law in effect prior to October 1, 1977.

The law in effect at that time, I.C. 35–24.1–2–6 (Burns Ed. 1975), listed methaqualone as a controlled substance under Schedule II. *See* I.C. 35–24.1–2–6(e)(1). I.C. 35–24.1–4.1–7(b) provided that the possession of a controlled substance classified in Schedule II was "a *felony* punishable by a determinate term of imprisonment of not less than one year nor more than ten [10] years and a fine not to exceed one thousand dollars [$1,000]." (emphasis added). In addition, I.C. 35–7–1–1 (Burns Ed. 1975) allowed a trial court in its discretion to suspend a felony or misdemeanor sentence. Thus, the prior conviction could only have been for a felony. *See Dixon v. State,* 437 N.E.2d 1318 (1982), Ind.; *Wise v. State* (1980) Ind., 400 N.E.2d 114.

We hold that the trial court did not err in finding Klopfenstein guilty of a Class D felony under the Firearms Act.

### III.

Klopfenstein next argues that the trial court erred in admitting evidence obtained as the result of an unlawful search. Klopfenstein does not attack the patdown search of his person incident to his arrest. Rather, he attacks the opening of the Tylenol bottle as violative of his Fourth Amendment rights.

Klopfenstein does not argue that the original stop of the vehicle or his subsequent arrest was invalid. Therefore, we assume there was a valid stop and, in addition, that there was probable cause for the arrest.

■ It is well-settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment. *United States v. Robinson* (1973) 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427. The scope of such a search is limited to a search of the person of the arrestee and the area within his immediate control. *Chimel v. California* (1969) 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685; *Payne v. State* (1976) 168 Ind.App. 394, 343 N.E.2d 325, *transfer denied.* The extent of the permissible search of the person and, specifically, whether closed, opaque containers found on the person of the arrestee may be opened has not been treated as extensively or as consistently as has the permissible scope of a search of the area within an arrestee's control.

The recent case of *New York v. Belton* (1981) 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768, although it bore upon the scope of a search of the area within an arrestee's control, contains significant language relevant to the case at bar. In *Belton* the Supreme Court held that a police officer may, upon effecting a lawful custodial arrest of the occupant of an automobile, search the passenger compartment of that automobile. *Id.* 453 U.S. at 461, 101 S.Ct. at 2864. The Court further stated:

"It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach.... Such a container may of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have....

It is true, of course, that these containers will sometimes be such that they could hold neither a weapon nor evidence of the criminal conduct for which the suspect was arrested. However, in *United States v. Robinson, supra,* the Court rejected the argument that such a container—there a 'crumpled up cigarette package'—located during a search of Robinson incident to his arrest could not be searched: 'The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect....'" *Id.* (citations and footnotes omitted).

Our Supreme Court in *Fyock v. State* (1982) Ind., 436 N.E.2d 1089, stated:

"We do not regard the *Belton* case as enunciating a 'new' constitutional principle.... [T]he Court only sought to explain and elaborate on the 'search incident to an arrest' exception ....

... *Belton* is merely additional authority for, and application of well established principles of law. The decision in the case at bar would be the same if *Belton* had never been decided." *Id.* at 1092.

Similarly, in the case at bar, *Belton,* although helpful, is not necessary to our determination that the search of the Tylenol bottle was proper.

In *U. S. v. Robinson* (1973) 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427, the Supreme Court upheld a search when a police officer found a crumpled cigarette package on the defendant's person, opened it and discovered capsules of heroin. The Court reasoned: "A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick *ad hoc* judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search.... A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search ...." *Id.* at 235, 94 S.Ct. at 477.

Further, the Court stated: "Having in the course of a lawful search come upon the crumpled package of cigarettes, he was entitled to inspect it ...." *Id.* at 236, 94 S.Ct. at 477. *Accord Gustafson v. Florida* (1973) 414 U.S. 260, 266, 94 S.Ct. 488, 492, 38 L.Ed.2d 456.

In a number of cases, Indiana Courts of Appeal, after *Robinson* and *Gustafson,* upheld searches of various containers found on the persons of arrestees. *See Jenkins v. State* (3d Dist. 1977) 172 Ind.App. 544, 361 N.E.2d 164 (bottle with pills); *Easley v. State* (1st Dist. 1975) 166 Ind.App. 316, 335 N.E.2d 838, *rehearing denied* (leather pouch); *Moss v. State* (2d Dist. 1975) 165 Ind.App. 502, 333 N.E.2d 141, *affirmed on rehearing,* 165 Ind.App. 502, 335 N.E.2d 633 (cigarette package); *Taylor v. State* (2d Dist. 1974) 160 Ind.App. 561, 313 N.E.2d 92, *transfer denied* (purse). In these cases, however, the "second search" of the container was not specifically challenged nor was the validity of the "second search" analyzed.

Without passing on the effect or retroactivity of the recent case of *U. S. v. Ross* (1982), —— U.S. ——, 102 S.Ct. 2157, 72 L.Ed.2d 572, we conclude that neither *United States v. Chadwick* (1977) 433 U.S. 1, 97

S.Ct. 2476, 53 L.Ed.2d 538 nor *Arkansas v. Sanders* (1979) 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 affects the validity of the search in the case at bar. In *Chadwick* the Court refused to uphold as incident to an arrest the search of a defendant's luggage an hour and a half after his arrest, finding that the search was too remote in time and place from the arrest. 433 U.S. at 14–15, 97 S.Ct. at 2485. The Court further stated:

"Once law enforcement officers have reduced luggage or *other personal property not immediately associated with the person of the arrestee* to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." *Id.* at 15, 975 S.Ct. at 2485 (emphasis added).

In *Sanders,* the Supreme Court specifically reserved the question of the constitutionality of searches of luggage incident to an arrest. 442 U.S. at 764, n.11, 99 S.Ct. at 2593, n.11.

This case is factually similar to *Chambers v. State* (1981) Ind., 422 N.E.2d 1198. There, the Indiana Supreme Court upheld the search of a wallet found on the person of the arrestee, stating: "*Chadwick* does not protect from warrantless searches items which are found on the person of an arrestee or items immediately associated with his person." *Id.* at 1203. *See also Akins v. State* (1981) Ind., 429 N.E.2d 232, *rehearing denied. Compare State v. Dubay* (Me.1975) 338 A.2d 797, 799 (Wernick, J., concurring).

 When Officer Owensby searched Klopfenstein, he found a Tylenol bottle in a "cellophane plastic" (Record at 101) on his person. Pills were in the bottom of the plastic bag. Owensby removed the Tylenol bottle from the plastic bag, opened it, and discovered the greenish brown solid which later chemical analysis proved to be 2.2 grams of hashish.

We hold that the search of the Tylenol bottle was proper as a part of the search of the defendant's person and incident to his arrest.

## IV.

Klopfenstein argues that there was an insufficient chain of custody established for state's exhibit 2, which was the Tylenol pill bottle and the hashish it contained.

 The chain of custody doctrine was established in *Graham v. State* (1970) 253 Ind. 525, 255 N.E.2d 652. Under this doctrine an adequate foundation must be laid for fungible real evidence which connects the exhibit with the defendant and shows the continuous whereabouts of the exhibit from the time it came into the possession of the police at least until its chemical identification. The purpose of this rule is to avoid any claim of substitution, tampering or mistake. *Henry v. State* (1978) 269 Ind. 1, 379 N.E.2d 132; *Jones v. State* (1973) 260 Ind. 463, 296 N.E.2d 407. Although a complete chain of custody must be established, the State is not required to exclude every remote possibility of tampering. *Mendez v. State* (1977) 267 Ind. 309, 370 N.E.2d 323; *Rinard v. State* (1976) 265 Ind. 56, 351 N.E.2d 20; *Coker v. State* (3d Dist. 1980) Ind.App., 399 N.E.2d 857, *transfer denied.*

Here, the evidence shows that after Officer Owensby discovered the Tylenol bottle in the plastic bag and examined its contents, he retained the bottle and turned it in to the property room the night of the arrest, December 15, 1979. In his presence, the plastic bag and the Tylenol bottle and its contents were placed in a larger heat-sealed plastic envelope to go to the narcotics branch. Owensby signed the outermost plastic bag after it was heat-sealed.

The police chemist, Dirk Shaw, testified that he received the exhibits on December 17, 1979 from the narcotics vault in the property room. Shaw took the exhibit to the crime laboratory and attached a log number to it. Shaw placed the exhibit in a locked steel cabinet until its contents could be analyzed. The items were kept in the envelope and heat-sealed when they were not being tested. The complete analysis revealed the substance was hashish. Shaw identified the heat-sealed plastic bag in

court as the one from which he based his report. He testified that it was in the same sealed condition as the last time he saw it.

 In the instant case, the possibility of tampering was precluded by the sealing of the envelope and the possibility of loss or substitution was precluded by marking the envelope with the officer's name and a log number. *See Gilliam v. State* (1978) Ind., 383 N.E.2d 297; *Guthrie v. State* (1970) 254 Ind. 356, 363, 260 N.E.2d 579, 584. The evidence indicates the whereabouts of the exhibit at all times, placing it either in the possession of an individual or in a locked vault. A sufficient chain of custody was established to insure the identity and integrity of the exhibits. The trial court did not err in admitting the exhibit into evidence.

### V.

 Klopfenstein next contends that the trial court erred in allowing the forensic chemist who tested the greenish-brown substance to testify as an expert. The determination whether a witness is qualified to testify as an expert is within the sound discretion of the trial court, whose ruling will not be disturbed absent a showing of abuse of discretion. *Epps v. State* (1977) 267 Ind. 177, 369 N.E.2d 404; *Slagle v. State* (3d Dist. 1979) Ind.App., 393 N.E.2d 798; *Culley v. State* (1st Dist. 1979) Ind. App., 385 N.E.2d 486. The professional qualifications of an expert witness may be established by practical experience as well as by formal training. *Epps, supra; Slagle, supra.* No precise quantum of knowledge is required if the witness shows a sufficient acquaintance with the subject to qualify him to give an opinion. *Reid v. State* (1978) 267 Ind. 555, 372 N.E.2d 1149.

 In the instant case, the evidence establishes that Dirk Shaw was the individual who had tested the greenish-brown substance in the crime laboratory. He was a forensic chemist employed by the Indianapolis Police Department. He had been qualified as an expert witness in the municipal courts between 100 and 125 times. He had been qualified the day of the trial in the case immediately preceding the one at bar.

Shaw described the scientific procedure by which he had determined the chemical content of the substance.

We conclude that the trial court did not abuse its discretion in qualifying Dirk Shaw as an expert in this case.

The judgment of the trial court is in all things affirmed.

SHIELDS, J., concurs.

BUCHANAN, C. J., concurs in result.