Willie FERRELL, Appellant–Respondent,

v.

STATE of Indiana, Appellee–Petitioner.

No. 49A05–9412–JV–490.

Court of Appeals of Indiana.

Oct. 24, 1995.

Annette Fancher Sheldon, Indianapolis, for appellant.

## OPINION

FRIEDLANDER, Judge.

Willie Ferrell, a juvenile, appeals the trial court's finding of delinquency when it determined that Ferrell had committed acts which if committed by an adult would be the offenses of Carrying a Handgun Without a License,[1] a class A misdemeanor, and Criminal Recklessness,[2] a class D felony.

We affirm in part and reverse in part.

The facts most favorable to the finding of delinquency are that on June 20, 1994, Ferrell, who was fifteen years old at the time, and several other youths walked up to the porch of Richard Graham's Indianapolis home and asked him to step outside. When Graham walked onto the porch, Ferrell and the others ran to the next-door neighbor's yard. Graham observed that Ferrell and another youth were carrying handguns. Approximately twenty-five feet from Graham's residence, Ferrell's companion bent down and began shooting at Graham's house. Ferrell stood behind the boy as the shots were fired. Graham heard eight gunshots and observed several other youths throw bottles and bricks at his house. Following the inci-

dent, the juveniles ran down an alley. While Graham saw Ferrell carrying a pistol, he was not sure whether Ferrell fired any shots.

At approximately 1:00 p.m. that afternoon, Indianapolis police officer David Miller received a radio report of the incident. The dispatcher informed Miller that a red Cadillac automobile had been involved in the shooting. Twenty minutes later, Miller stopped a red Cadillac several blocks from Graham's residence. Ferrell, who was one of two occupants in the vehicle, was a passenger in the backseat. Miller searched the vehicle and found two handguns. One of the pistols, a .380 automatic, was found underneath the backseat. This handgun was accessible to Ferrell and was not loaded.

Ferrell was arrested and charged with criminal recklessness and carrying a handgun without a license in a vehicle. Following a fact-finding hearing on July 18, 1994, the juvenile court entered a finding that Ferrell had committed the charged acts. A dispositional decree was entered on August 17, 1994, which adjudicated Ferrell a delinquent child.

Ferrell appeals and presents the following issues:

Was the evidence sufficient to support the delinquent acts?

■ We initially observe that the State has waived its right to file an appellate brief in this matter. A less stringent standard of review applies and an appellant need only establish prima facie error to win a reversal when the appellee fails to file a brief. *State v. Costas* (1990), Ind., 552 N.E.2d 459; *Finney v. Relphorde* (1993), Ind.App., 612 N.E.2d 191.

■ Ind.Code 31–6–7–13 requires a finding by a juvenile court that a child committed a delinquent act beyond a reasonable doubt. When reviewing a claim that the evidence is insufficient to support a criminal conviction (or a true finding in a juvenile case), this court neither reweighs the evidence nor assesses the credibility of wit-

---

1. Ind.Code 35–47–2–1.

2. Ind.Code 35–42–2–2.

nesses. We look to the evidence most favorable to the judgment and to any reasonable inferences that may be drawn therefrom. *Chandler v. State* (1991), Ind., 581 N.E.2d 1233. If there is evidence of probative value from which the trier of fact could reasonably find the existence of each element of the offense, the conviction will be affirmed. *McDonald v. State* (1987), Ind., 511 N.E.2d 1066. We will reverse a conviction, however, if the record does not reveal substantial evidence of probative value and there is a reasonable doubt in the minds of reasonably prudent persons. *Beaty v. State* (1981), Ind. App., 421 N.E.2d 752.

In order to find that Ferrell committed criminal recklessness, the State was required to prove that he "recklessly, knowingly, or intentionally performed an act that created a substantial risk of bodily injury to another while armed with a deadly weapon." IC 35–42–2–2; *see also Allen v. State* (1991), Ind. App., 566 N.E.2d 1047.

At trial, Graham testified that: "I don't know who shot, I know both of them had a gun." *Record* at 44. Graham's testimony also revealed that he saw "the lighter skinned one [not Ferrell] ben[d] down and ... fir[e]." *Record* at 43. Graham never claimed to have seen Ferrell shoot or even attempt to fire a gun, and Miller testified that the gun was not loaded when he seized it from the Cadillac. The State presented no evidence showing that this handgun had ever been fired.

Under certain circumstances, we will affirm a conviction for criminal recklessness even though the victim did not observe the act. In *Allen*, this court upheld a conviction for criminal recklessness when the evidence demonstrated that the defendant fired shots at her husband while chasing him through a wooded area. While the victim did not actually see his wife shoot at him, he heard gunshots as she pursued him. There were no other individuals in the immediate vicinity who could have done the shooting, and the wife admitted that she *did* shoot the gun near her husband. Unlike the circumstances in *Allen*, Graham testified that there were "five or six" young men present during the shooting, *record* at 37, 43, and that he was

trying to watch all of them. Graham only observed Ferrell stand and watch as one of the other youths fired at the house.

■ Although the State's evidence demonstrated that Graham saw Ferrell with a handgun, this, without more, is insufficient to show that Ferrell performed an act that created a substantial risk of bodily injury to support the adjudication of criminal recklessness. In *Warren v. State* (1993), Ind.App., 615 N.E.2d 500, this court reversed a conviction for criminal recklessness when the evidence only established that the defendant had placed an unloaded handgun against another person's stomach. In reversing, the *Warren* court observed that:

> " "[M]erely placing an unloaded firearm against another, without more, does not create a substantial risk of bodily harm. The evidence here shows that Warren placed the unloaded gun against [the victim's] stomach and waved the gun in his presence. This evidence is insufficient to support a conviction for criminal recklessness because the State failed to prove that there was a substantial risk of bodily injury.... [A] substantial risk of bodily injury may not be proven by mere speculation for which there has been no evidence presented at trial...."

*Id.* at 502.

As in *Warren*, the State offered no evidence establishing that Ferrell's possession of the pistol created a substantial risk of bodily injury. There was no evidence showing that the gun was loaded when Ferrell was in possession of it, and Graham did not testify whether Ferrell even pointed the gun in his direction. The finding that Ferrell committed the act of criminal recklessness while armed with a deadly weapon must therefore be reversed. *Id.; see also Elliott v. State* (1990), Ind.App., 560 N.E.2d 1266.

■ Ferrell also argues that the evidence was insufficient to show that he committed the delinquent act of carrying a handgun without a license. IC 35–47–2–1 provides in relevant part as follows:

> "[A] person shall not carry a handgun in any vehicle or on or about his person, except in his dwelling, on his property or

fixed place of business, without a license issued under this chapter being in his possession."

As discussed above, Miller found an unloaded handgun under the car seat where Ferrell sat as a passenger. To support a conviction for carrying an unlicensed handgun in a vehicle, the State is required to prove that the defendant had control over the automobile, knowledge of the gun's presence, and an intent to transport the weapon. *Cole v. State* (1992), Ind.App., 588 N.E.2d 1316. One commits the offense of carrying a handgun without a license when the evidence demonstrates that the weapon is on his person. *McAnalley v. State* (1987), Ind., 514 N.E.2d 831. Constructive possession may be inferred even when the defendant's control is not exclusive and circumstantial evidence points to the defendant's knowledge of the presence of a weapon. *Hoffman v. State* (1988), Ind., 520 N.E.2d 436; *Woods v. State* (1984), Ind., 471 N.E.2d 691. In *Klopfenstein v. State* (1982), Ind.App., 439 N.E.2d 1181, this court observed that:

> "While an accused must have actual knowledge of the presence of the item and of the items' character, this knowledge can be inferred from the fact that the item was found in a place under his dominion and control."

*Id.* at 1185.

Although Ferrell maintains that "the State did not establish a link between the Respondent and the handgun found by Officer Miller in the red Cadillac," Appellant's Brief at 15, the record reflects otherwise. Graham testified that he observed Ferrell carrying a pistol. Approximately twenty minutes after the shooting incident, Miller responded to a call which reported that a red Cadillac had been involved. Miller then stopped an automobile matching the description only blocks away from Graham's residence. After ordering Ferrell from the backseat, Miller seized a pistol from beneath the seat that was within Ferrell's reach. This evidence permitted the factfinder to conclude that Ferrell was armed and that he discarded the handgun under the seat prior to Miller's stop of the automobile. *See Hoffman, supra.* The evidence was sufficient to support the trial court's determination that Ferrell carried an unlicensed handgun in a vehicle.

In light of the foregoing, the judgment is reversed with respect to the true finding for committing an act of criminal recklessness if it had been committed by an adult, and affirmed with respect to the charge of carrying an unlicensed handgun in a vehicle.

CHEZEM, J., concurs.

SULLIVAN, J., concurs in result.