FILED

Feb 08 2017, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Karen Celestino-Horseman
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Matthew James Cole,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | February 8, 2017<br><br>Court of Appeals Case No.<br>49A02-1603-CR-542<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Marc T.<br>Rothenberg, Judge<br><br>Trial Court Cause No.<br>49G02-1506-F3-22317 |

**Altice, Judge.**

## Case Summary

[1] Following a jury trial, Matthew Cole was convicted of Level 3 felony resisting law enforcement, Level 5 felony possession of an altered handgun, Level 5

felony possession of methamphetamine, Level 5 felony possession of a narcotic drug, three counts of class A misdemeanor carrying a handgun without license, and class A infraction possession of paraphernalia. On appeal, Cole argues that the State presented insufficient evidence to support a number of his convictions.

[2] We affirm.

## Facts & Procedural History

[3] While on patrol during the early evening hours of June 23, 2015, Officer Timothy Elliott of the Indianapolis Police Department parked his marked police vehicle on an access road in Washington Park in Indianapolis. Officer Elliott heard a car engine rev and saw pedestrians leaping out of the way of a car traveling down the access road at a high rate of speed. Officer Elliott activated his lights and positioned his vehicle to block the car's path. When it reached Officer Elliott's vehicle, the car came to an abrupt stop.

[4] When Officer Elliott approached the vehicle, he observed two male occupants and saw a knife near the center console. Officer Elliott asked the driver, who was later identified as Cole, for his license and registration. Cole had very contracted pupils and appeared to be nervous. Specifically, Cole would not look Officer Elliott in the eye, repeatedly looked toward his passenger, stuttered while answering questions, and was evasive and unable to give specific answers when asked where he had been and where he was going. Cole gave Officer Elliott a picture identification card that clearly belonged to someone else. Cole reached toward the glove box, then stopped and stated that the vehicle belonged

to his friend and that he did not have the registration. Based on this behavior, Officer Elliott believed that Cole was under the influence of drugs.

[5] Meanwhile, the passenger, Joshua Dyer, opened the glove box and reached inside and also reached down toward the floorboard. Officer Elliott ordered Dyer to keep his hands where he could see them. Dyer gave his identification to Officer Elliott. As Officer Elliott walked toward the back of the car to get the license plate number, the car sped away. Officer Elliott immediately called for backup and got back into his vehicle and began pursuing the car with his lights and sirens activated.

[6] Cole led Officer Elliott and other responding officers on a high-speed chase, during which Cole repeatedly crossed into the path of oncoming traffic, failed to stop at several stop signs, endangered pedestrians, went airborne on at least two occasions, and reached a top speed of approximately ninety miles per hour. At the end of the pursuit, Cole drove through the parking lot of a fast food restaurant, into a residential alley, and came to a stop in a residential backyard after crashing through a fence.

[7] By the time the car came to a stop, IMPD Officer Derrick Harper had joined the pursuit. Officer Harper parked his police car beside Officer Elliott in the driveway of the residence. Officers Elliott and Harper both exited their vehicles and approached the car with their weapons drawn—Officer Elliott on the driver-side and Officer Harper on the passenger-side—while shouting commands for Cole and Dyer to exit the vehicle with their hands up.

[8] Cole opened the driver-side door and put his hands in the air, but then pulled the door closed. Dyer opened the passenger-side door with his left hand and then put his left hand out while keeping his right hand hidden. Dyer then briefly put his right foot on the ground as if he was going to get out of the car, but then pulled it back inside. Dyer then started rummaging around on the floorboard and under his seat, continuing to disregard the officers' commands to put his hands up. Officer Harper then observed Dyer, who was bent over and whose hands were not in view, make a motion with his shoulder that Officer Harper believed was consistent with cocking a firearm. Dyer then sat up and began to raise his right elbow as if he had something in his hand. At the same time, Cole put the car in reverse and accelerated. The car fishtailed first toward Officer Elliott and then toward Officer Harper, who was trapped between the accelerating car and the fence. In response to the threat of the oncoming car and believing that Dyer was armed and preparing to fire on him, Officer Harper shot and fatally wounded Dyer. Officer Harper was unable to get a clear shot at Cole, so he did not fire again. Cole continued to accelerate and only surrendered when the car became stuck on a chain-link fence.

[9] After Cole was taken into custody, police searched the car and discovered three handguns—a .22 revolver and a 9mm Taurus were found in the glove box and a Ruger .380 with an obliterated serial number was found on the rear passenger floorboard. Additionally, a large amount of ammunition and numerous syringes were found throughout the car. In the center console, police found two

digital scales, a glass pipe with methamphetamine residue, and a manicure kit containing a spoon with heroin residue, a razor blade, and .35 grams of heroin.

[10] As a result of these events, Cole was charged as follows: Count I, Resisting Law Enforcement as a Level 3 felony; Count II, Possession of an Altered Handgun, a Level 5 felony; Count III, Possession of Methamphetamine as a Level 5 felony; Count IV, Possession of a Narcotic Drug as a Level 5 felony, Counts V-VII, Carrying a Handgun Without a License as a class A misdemeanor; and Count VIII, Possession of Paraphernalia as a class A infraction.[1] A two-day jury trial commenced on November 10, 2016, at the conclusion of which Cole was found guilty as charged. The trial court sentenced Cole to an aggregate term of eighteen years, with ten years executed and eight years suspended to probation. Cole now appeals.

**Discussion & Decision**

[11] On appeal, Cole argues that the State presented insufficient evidence to support his convictions. In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Atteberry v. State*, 911 N.E.2d 601, 609 (Ind. Ct. App. 2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences flowing therefrom. *Id.* If there is substantial evidence of probative value from which a

---

[1] Effective July 1, 2015, this offense has been reclassified as a Class C misdemeanor. *See* Ind. Code § 35-48-4-8.3.

reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, the judgment will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008). It is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the conviction. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007).

### 1. Resisting Law Enforcement

Cole first challenges his conviction for resisting law enforcement as a Level 3 felony. A person commits resisting law enforcement as a class A misdemeanor if he or she knowingly or intentionally "forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties[.]" Ind. Code § 35-44.1-3-1(a)(1). The offense is elevated to a Level 3 felony if, while committing the offense, "the person operates a vehicle in a manner that causes the death of another person[.]" I.C. § 35-44.1-3-1(b)(3). On appeal, Cole argues that the evidence was insufficient to support the elevation of his conviction to a Level 3 felony because the State failed to prove that it was Cole's operation of the car that caused Dyer's death. Instead, he argues that Dyer's death was caused by Officer Harper, who shot Dyer in response to Dyer's own actions in making furtive movements and refusing to show his hands.

[13]    This court recently discussed causation in the context of the resisting law enforcement statute in *Moore v. State*, 49 N.E.3d 1095 (Ind. Ct. App. 2016), *trans. denied*.  In that case, the court was asked to consider whether the evidence was sufficient to establish that the defendant had caused the injury sustained by the arresting officer when he fell down while chasing the fleeing defendant.  *Id.* at 1106; *see also* I.C. § 35-44.1-3-1(b)(1)(B) (elevating resisting law enforcement to a Level 6 felony when the defendant "inflicts bodily injury on or otherwise causes bodily injury to another person").  The court held that the defendant's acts of resistance must be a proximate cause of the injury, and not merely a contributing cause.  *Id.* at 1107-08.  As the court noted, a contributing cause is "a factor that—though not the primary cause—plays a part in producing a result."  *Id.* at 1107 (quoting *Abney v. State*, 766 N.E.2d 1175, 1178 (Ind. 2002)).  The court described proximate cause as follows:

> A finding of proximate cause embodies a value judgment as to the extent of the physical consequences of an action for which the actor should be held responsible.  Accordingly, "proximate cause questions are often couched in terms of 'foreseeability;' an actor is not held responsible for consequences which are unforeseeable."  It follows that, where an intervening cause is claimed as superseding the defendant's actions, the intervening cause must be unforeseeable to relieve the defendant of criminal liability.

*Id.* at 1107-08 (quoting *Gibbs v. State*, 677 N.E.2d 1106, 1109 (Ind. Ct. App. 1997)).

[14]   Applying the proximate cause standard, the majority in *Moore* found the evidence insufficient to prove that the defendant's actions caused the arresting officer's injuries. The court noted that the officer would not have been injured if he had not pursued the defendant, but reasoned that "that fact is only sufficient to prove that Moore was a contributing cause of the injury" and that "[t]he actual cause of [the officer's] fall [was] not clear from the record." *Id.* at 1108. Judge Bradford dissented, reasoning that the evidence was sufficient to support a finding of proximate cause because "it is not unreasonable to anticipate that a consequence of fleeing from the police would be that an officer could fall and be injured during the ensuing chase." *Id.* at 1109 (Bradford, J., dissenting).

[15]   Cole directs our attention to two additional cases, both of which predate *Moore* and neither of which employed the proximate-cause standard. In *Whaley v. State*, 843 N.E.2d 1, 10-11 (Ind. Ct. App. 2006), *trans. denied*, this court held that the defendant had caused injuries to the arresting officers so as to support the elevation of his resisting law enforcement charges to class D felonies. In that case, Whaley was lying on the ground and put his arms underneath his body to prevent the officers from handcuffing him. The officers had to hit Whaley's forearms in order to bring his arms behind his back, and both officers sustained injuries in the process of doing so. This court held that the convictions were properly elevated because the officers' injuries "were directly related to and caused by Whaley's resisting arrest." *Id.* at 11.

[16]     In *Smith v. State*, 21 N.E.3d 121, 125-26 (Ind. Ct. App. 2014), however, another panel of this court found the evidence insufficient to support a finding that the defendant had inflicted or otherwise caused bodily injury to the arresting officer as necessary to support the elevation of the crime to a class D felony. In that case, Smith refused to put her hands behind her back to be handcuffed even after receiving a "knee strike" from the officer, so the officer pulled her arm "possibly as hard as [he] could" and they both ended up on the ground. *Id.* at 123. During this process, the officer sustained injuries to his knuckles and fingers. In reversing the elevation of Smith's conviction, the *Smith* court reasoned that "we do not believe a person who is thrown to the ground necessarily 'inflicts' or 'causes' an injury suffered by the person who throws her to the ground[.]" *Id.* at 125. The court went on to distinguish *Whaley*, noting that "[u]nlike Whaley, Smith did not create a scenario in which Officer Jones'[s] only option in handcuffing her was to remove her hands from a location in which he could not reach." *Id.* at 126.

[17]     Although *Smith* and *Whaley* did not use the language of proximate cause, in *Moore*, 49 N.E.3d at 1108, this court noted that those cases may be interpreted in a manner consistent with that standard.

> [I]n *Whaley*, Whaley was the direct cause of the officers' injuries because he left the officers no other choice but to hit his arms. In terms of proximate cause, this meant that the officers' injuries were a highly foreseeable result of Whaley's actions. In contrast, in *Smith*, the officer had other options, and his decision to take Smith "to the ground" and injure himself was not as foreseeable. Therefore, although the *Smith* Court did not frame its decision in

terms of proximate cause, we interpret the Smith Court's holding to imply that Smith's actions were not a proximate cause of the officer's injuries.

*Id.*

[18] Thus, we are brought back to the touchstone of our proximate cause analysis—foreseeability. Although Cole cites *Moore* and acknowledges that the proximate cause standard is controlling, in his analysis, he does not discuss the foreseeability of the shooting that led to Dyer's death. Instead, he simply argues that while his operation of the car might have been a contributing factor, "[t]he proximate cause of Dyer's death was the shooting of Dyer by Officer Harper and Officer Harper pulled that trigger because he thought Dyer was going to try and shoot him." *Appellant's Brief* at 17. We interpret this as an argument that an intervening cause—whether it be Officer Harper's decision to fire his weapon or Dyer's furtive gestures and refusal to show his hands—superseded Cole's actions. But as we noted above, this court has explained that an intervening cause must itself be unforeseeable if it is to relieve the defendant of criminal liability. *See Moore*, 49 N.E.3d at 1107-08.

[19] The foreseeability of an intervening cause presents a question of fact for the jury. *Marlow v. Better Bars, Inc.*, 45 N.E.3d 1266, 1275 (Ind. Ct. App. 2015), *trans. denied*. Under the circumstances of this case, we conclude that all of the events Cole claims to be superseding causes were foreseeable. Cole and Dyer were attempting to evade police in a car containing multiple firearms and a large amount of ammunition. In fleeing from police, Cole drove very

recklessly, crossing into the path of oncoming traffic, disregarding traffic signals, nearly striking pedestrians, and reaching a top speed of approximately ninety miles per hour before crashing through a fence and coming to a stop in a residential backyard. When police approached the car, Cole accelerated toward them, and Officer Harper was trapped between a fence and the oncoming car. Simultaneously, Dyer was reaching down, and although Officer Harper could not see what he was doing, it appeared that Dyer was cocking a gun. In light of these facts, it was reasonable for the jury to conclude that Cole and Dyer were acting in concert to evade the police by any means necessary, including the use of deadly force against the officers, and Dyer's furtive movements and refusal to show his hands were therefore easily foreseeable. It was equally foreseeable that a police officer would respond by firing on the occupants of the vehicle. Contrary to Cole's arguments, it makes little difference that Officer Harper shot Dyer rather than Cole. Officer Harper testified as follows:

> This is a very, very small amount of time. I assessed that the first threat was the person with the gun and the second threat is the car moving. You can't really decipher which one is more important. It's just you go with what you see and have a picture of. I know I can't shoot a car. So I shot the person with the gun.

*Transcript* at 167. Officer Harper testified further that if he had been able to get a clear shot, he would have shot Cole as well.

[20] In sum, Cole created a situation in which Officer Harper's only option to protect himself was to discharge his weapon. The fact that Officer Harper was able to get a clear shot at Dyer and not Cole does nothing to relieve Cole of

responsibility for the foreseeable results of his actions. For all of these reasons, we conclude that the State presented sufficient evidence to prove that Cole's operation of the car was a proximate cause of Dyer's death. Accordingly, his resisting law enforcement conviction was properly elevated to a Level 3 felony.

### 2. Possession of an Altered Handgun

Next, Cole argues that the evidence was insufficient to support his conviction for possession of an altered handgun, a Level 5 felony. In order to support this conviction, the State was required to prove that Cole "possess[ed] any handgun on which the name of the maker, model, manufacturer's serial number, or other mark of identification has been changed, altered, removed, or obliterated[.]" Ind. Code § 35-47-2-18. This court has interpreted this statute to also require the State to prove that the defendant knew that the handgun had been altered. *Robles v. State*, 758 N.E.2d 581, 583 (Ind. Ct. App. 2001), *trans. denied*. Cole does not dispute that he possessed the Ruger or that its serial number was obliterated. Instead, he argues that the State presented insufficient evidence to prove that he was aware that the Ruger had been altered.

"A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b); *see also Robles*, 758 N.E.2d at 583. Knowledge may be proven by circumstantial evidence and inferred from the facts and circumstances presented in a particular case. *Robles*, 758 N.E.2d at 583. In *Robles*, our Supreme Court concluded that the evidence was sufficient to permit a reasonable inference that the defendant

was aware that the handgun he possessed was altered because "the spot where the serial number had been filed off was 'shiny'" and the defendant had "possessed the gun for over a week and had ample opportunity to discover that the serial number had been removed." *Id.* at 584. In *Wagerman v. State*, on the other hand, this court found that the evidence was insufficient to establish knowledge where the weapons at issue were "thrust upon" the defendant by his companions mere seconds before he was searched. 597 N.E.2d 13, 14 (Ind. Ct. App. 1992), *trans. denied*. Under those circumstances, this court held that the defendant had no opportunity to apprise himself of the facts and avoid the prohibited conduct. *Id.* at 16.

[23] The evidence in this case was sufficient to support a reasonable inference that Cole had the opportunity to apprise himself of the fact that the Ruger had been altered. When police searched the car, they found the Ruger within Cole's reach on the rear passenger floor board. Moreover, the holster Cole was wearing on his belt at the time of his arrest was sized to fit the Ruger and its curvature and wear patterns matched the Ruger. This evidence supports an inference that Cole not only possessed the Ruger, but had been carrying it on his person for some length of time. Under these circumstances, it was reasonable for the jury to infer that Cole knew that the Ruger had been altered.

### 3. Possession of a Narcotic Drug

[24] Cole next argues that the State presented insufficient evidence to support his conviction for Level 5 felony possession of a narcotic drug, i.e., heroin. His

argument, however, is premised on a misunderstanding of the evidence presented at trial and relied upon by the State. Specifically, Cole asserts that he was convicted of possessing heroin found in Dyer's groin area during an autopsy. A review of the record reveals that this is not the case. As an initial matter, the substance found on Dyer's body during his autopsy was methamphetamine, not heroin.[2] Second, the record reveals that Cole's conviction for possession of a narcotic drug was based on the heroin residue on the spoon and the baggie of heroin found in the manicure kit in the car's center console. Indeed, during closing argument, the State referred to the baggie and the residue and made no mention of the substance found on Dyer's body. *See Transcript* at 422 (prosecutor noting in closing argument "[t]he heroin, the residue on the spoon. The spoon that's in that manicure kit. Additionally, there was a baggie, an actual baggie of heroin in that kit."). Cole makes no argument that he did not possess the heroin found in the manicure kit. Accordingly, we cannot conclude that the evidence was insufficient to support his conviction for possession of a narcotic drug.

*4. Carrying a Handgun without a License*

---

[2] To the extent that Cole intended to use his argument that he did not possess the substance found on Dyer's body to challenge his conviction for possession of methamphetamine as a Level 5 felony, we note that his conviction on that charge was based on methamphetamine residue found on two glass pipes found in the center console, not the substance found on Dyer's body. Indeed, the prosecutor made the following statement in closing argument: "Methamphetamine. We saw that—the residue on the two glass pipes. You heard Matthew Whitt from the Crime Lab testify that there were two glass pipes. You saw them in the center console. You saw the manicure kit." *Transcript* at 421-22. The State did not ask the jury to convict Cole of possessing the methamphetamine discovered on Dyer's body.

[25] Finally, Cole challenges two of his three convictions for carrying a handgun without a license. Although he does not challenge the conviction relating to the Ruger, he argues that the State presented insufficient evidence to support his convictions with respect to the .22 revolver and the 9mm Taurus, both of which were found in the glove box. Cole concedes that he was not licensed to carry a handgun, but he argues that these convictions must be reversed because the State failed to prove that he knew the guns were in the glove box.

[26] Ind. Code § 35-47-2-1(a) provides in relevant part that "a person shall not carry a handgun in any vehicle or on or about the person's body without being licensed under this chapter to carry a handgun." To support a conviction for carrying a handgun in a vehicle, the State is required to prove that: "(1) the defendant had control over the vehicle, (2) the unlicensed handgun was found in a vehicle, and (3) the defendant had knowledge of the weapons' presence." *Henderson v. State*, 715 N.E.2d 833, 835 n.2 (Ind. 1999).

> As held by this court in *Klopfenstein v. State*, 439 N.E.2d 1181, 1184 (Ind. Ct. App. 1982), to establish this offense, the State must prove that a handgun was found in a vehicle and that the defendant had control of either the weapon *or of the vehicle with knowledge of the weapon's presence*. In addition, it must be established that there was an intention to convey or transport the weapon. *Id. See also D.C.C. v. State*, 695 N.E.2d 1015, 1016 (Ind. Ct. App. 1998); *Ferrell v. State*, 656 N.E.2d 839, 842 (Ind. Ct. App. 1995). Although the presence of a passenger in a car in which a handgun is being transported is insufficient to find that passenger guilty of carrying a handgun in a vehicle, the driver of a vehicle is in violation of the statute if he conveys a handgun in the vehicle regardless of whether it is on or about his person.

> *Klopfenstein*, 439 N.E.2d at 1185. Knowledge of the presence of
> the handgun is all that is required. *Id.*[3]

*Thurman v. State*, 793 N.E.2d 318, 320 (Ind. Ct. App. 2003) (emphasis in original).

[27] In this case, there is ample evidence from which the jury could reasonably infer Cole's knowledge and intent. When Officer Elliot asked for the car's registration during the initial stop, Cole started to reach for the glove box, but then stopped and told the officer that he did not have the registration. It is reasonable to infer from this that Cole knew that there was contraband in the glove box and did not want Officer Elliot to see it. Moreover, there was a large amount of ammunition of various calibers found throughout the car. Specifically, there were thirty-two unfired cartridges found scattered among loose change, unwrapped candy, and miscellaneous debris in the driver-side door pocket. Four of the cartridges were 9mm, one was .380 caliber, and the remaining twenty-seven cartridges bore a "C" headstamp. Four more cartridges were found in a backpack in the backseat, two of which were .380 caliber and two of which bore the "C" headstamp. A gun box found behind the driver's seat contained firearm pieces and forty-three unfired cartridges, and a separate ammunition box also found on the rear driver-side floorboard

---

[3] For this reason, Cole's reliance on *Henderson*, 715 N.E.2d at 838, is misplaced because the defendant in that case was a passenger, not a driver in control of the vehicle. *See Thurman v. State*, 793 N.E.2d 318, 320 n.2 (noting "that the defendant in *Henderson* was charged with carrying the handgun on or about his person, not in a vehicle").

contained an additional nine unfired cartridges, five of which were .45 caliber and four of which were .410 caliber. Additionally, a loaded 9mm magazine was found in the center console, a holster was wedged between the driver's seat and the center console, and a gun box for a Smith & Wesson was found in the trunk. The sheer ubiquity of ammunition and firearm accessories throughout the entire car was more than sufficient to support an inference that Cole had control of the car with knowledge of the guns' presence, as well as the intent to convey or transport those weapons. Accordingly, Cole's convictions for carrying a handgun without a license are supported by sufficient evidence.

[28] Judgment affirmed.

[29] Bradford, J., and Pyle, J., concur.